UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

WAYNE ROSE,                                    DOCKET NO.:

                        Plaintiff,

                                                       COMPLAINT

        Against

RESHMA SHAH and AMIT SEHGAL

                        Defendants.

---------------------------------------------------X

Defendants Address:
15235 Pavlo Place
Waterford, VA 20197

        Plaintiff, WAYNE ROSE, as and for his Complaint against the above named defendant

alleges as follows:

## VENUE AND JURISDICTION

        Venue is based upon 28 USC Section 1332 under diversity as each of the defendants,

husband and wife, are citizens of another State.  Plaintiff is a citizen of New York State.

        Venue is also based upon 28 USC Section 1391 as the events giving rise to the causes of

action as well as the property that is the subject of the action is situated in New York County, To

wit, New York City State Island Ferry Terminal, Whitehall Station, 2 South Street, New York,

NY.

## THE PARTIES

2.      Plaintiff re-alleges the allegations set forth above and incorporates same herein as if more

fully set forth at length and by reference.

1

3.      That at all times hereinafter mentioned plaintiff is a resident of the City of Brooklyn, County of Kings, State of New York.

4.      That at all times hereinafter mentioned, the defendants RESHMA SHAH ("SHAH") and AMIT SEHGAL ("SEHGAL") are residents of the village of Waterford, County of Loudoun, State of Virginia.

5.      That at all times hereinafter mentioned the defendants SHAH and SEHGAL are husband and wife.

6.      That at all times hereinafter mentioned defendant SHAH was the President of a New York Domestic Company Called WHITERHALL PRETZEL & ICE CREAM, INC. ("WHITEHALL PRETZEL") located in the New York City Staten Island Ferry Terminal, Whitehall Station, 2 South Street, New York, NY.

7.      That at all times hereinafter defendant SEHGAL is the President and Shareholder of IMPECCABLE BAKES, INC. ("IMPECCABLE") is a New York Domestic Business being an Auntie Anne's Pretzel Store located in the Staten Island Ferry Terminal, Whitehall Station, 2 South Street, New York, NY.  (At all times hereinafter mentioned "IMPECCABLE also implies to defendant "SEHGAL").

## **FACTUAL BACKGROUND INFORMATION**

8.      Plaintiff re-alleges the allegations set forth above and incorporates same herein as if more fully set forth at length and by reference.

9.      That in or about May 25, 2005 Plaintiff, thru his then formed New York Company Different Twist Pretzel of NY, Inc. formed on April 12, 2005 entered into a Master Development Contract for the State of New York with a company called "Chapel Banks Investments, Inc. ("Chapel") alleged owner of the Mark "Different Twist Pretzel Company".  A copy in the

business of selling hand rolled pretzels in malls, transportation hubs and other retail locations and other related products. **(Exhibits "A" and "B" respectively).**

11.     That plaintiffs obligations under said Chapel agreement would not commence upon the opening of a store in the Staten Island Ferry Terminal.

12.     That during plaintiff's negotiations with Chapel defendant SHAH formed a New York Corporation on May 6, 2005 called "WHITEHALL PRETZEL & ICE CREAM, INC. ("WHITEHALL PRETZEL"). **(Exhibit "C").**

13.     That in or about June 2005 plaintiff and defendant SHAH, individually, entered into an agreement wherein she would open a store in the Staten Island Ferry Terminal, pursuant to plaintiff's negotiations with Chapel. **(Exhibit "D").**

14.     That on or about June 8, 2005 defendant SHAH entered into a sublease agreement with Ferry Terminal Management Company, LLC, ("FTMG"), the then Master Leasee from the New York City Department of Transportation for the retail spaces located in the Staten Island Ferry Terminals Whitehall and St. George Terminals with her corporation WHITEHALL PRETZEL and signed by her as "Reshma SHAH". **(Exhibit "E")** (Front and signature pages of said lease only at this time).

15.     That said sublease of June 8, 2005 indicated plaintiff home residence as the place of business for defendant SHAH's company WHITEHALL PRETZEL as well as the address where any default notices were to be sent in order to protect plaintiff's store/site.

16.     That defendant SHAH's June 8, 2005 WHITEHALL PRETZEL Lease with FTMG specifically identified plaintiff's then Company Different Twist of NY, Inc. as defendant SHAH's franchisor on page 7, subparagraph (g) of paragraph 3. **(Exhibit "E).**

17.    That subsequent thereto as a result of insufficient power loads and other issues, the Master Leasee for the Ferry Terminals FTMG commenced litigation against the City of New York which resulted in the City of New York taking back the retail spaces in the terminals.

18.    That on July 5, 2007, without plaintiff's knowledge, defendant SHAH entered an Amendment and attornment agreement with the The City of New York to change the notice provisions of the sublease with FTMG from plaintiff's home to her home.  (Exhibit "F").

19.    That same was done as to not let plaintiff know of any activity, specifically any defaults under her lease which the contract with the plaintiff would have allowed him to cure in order to secure the store location in the Ferry Terminal with another Licensee.

20.    That on December 24, 2007 plaintiff collapsed in his home and was brought to the hospital wherein he was diagnosed with cancer and remained there as well as a nursing home for approximately six (6) months until June 18, 2008.

21.    That on September 18, 2008 plaintiff duly assigned his corporation Different Twist Pretzel of NY, Inc. to himself individually.  (Exhibit "G").

22.    That subsequent thereto the City of New York Department of Transportation transferred the operations of the Ferry Terminals to NYC Economic Development Corporation.

23.    That defendant SHAH opened her store WHITEHALL PRETZEL on or about January 1, 2009).  (Exhibit "H").

24.    This information (Exhibit "H") was obtained by the issuance of a Subpoena of Judge Sidney Strauss, Supreme Queens as NYC Department of Transportation would not comply with plaintiff's request for the information under the Freedom of Information Act and was served upon NYC Corporation Counsel.

25.    That from approximately <u>January 2009</u> until approximately <u>June of 2010</u> plaintiff was being duly paid those royalties as set forth in his contract with Chapel which checks and indicated "WHITEHALL PRETZEL".  **(Exhibit "I").**

26.    That on <u>June 1, 2009</u>, a period of six (6) months after defendant SHAH opened her WHITEHALL PRETZEL store, and while plaintiff was receiving royalties (a sum far less than entitled), defendant SHAH entered into a Master Development Contract with a Company called APM (assignee of the rights of Chapel, owned by the same individuals) which by doing so defendant SHAH tortuously interfered with plaintiff's contract.  **(Exhibit "J").**

27.    The SHAH Master Development agreement of <u>June `1, 2009</u> which tortuously interfered with the plaintiff's Master Development Agreement financially benefited the defendant SHAH as the royalties were now two (2%) percent less and benefitted Chapel as it was receiving an extra 1/2% on the royalty sales of defendant SHAH's WHITEHALL PRETZEL Store.

28.    That the defendant SHAH and Chapel/APM "played this game" with plaintiff concealing the Breach and Tortious Interference of the parties of plaintiff's Master Development Contract for a period of another year until June of 2010 when plaintiff being stronger after over a year of physical therapy and rehabilitation realized the royalty amounts were far less than they should have been.

29.    That plaintiff, in or about <u>September 2010</u> then commenced proceedings in Supreme Court, Queens County against SHAH and Chapel and other suspected in the wrongs against him..

30.    That upon information and believe sometime in <u>2010</u> Apple Industrial Development Corp. took over as a component unit of the NYC EDC and merged with them on <u>October 1, 2014.</u>

31.    That during this time Apple Industrial and the EDC would not release any information to the plaintiff on the defendants Whitehall Store and as such, plaintiff had to rely on obtaining this information thru the discovery litigation.

32.    That while plaintiff was still have serious health issues and while pursuing his claim, the then Administrative Judge Fern A. Fisher on February 18, 2014 transferred the Queens County File to Kings County, the County in which the plaintiff was then presiding.

33.    That no party was aware that the file was being transferred but plaintiff was advised that he should recommence his case in Kings Supreme.

34.    As such, that in or about January of 2014 plaintiff commenced an identical action in Supreme Kings under Index Number 196/2014 as per the Queens County Clerks statements.

35.    That subsequent thereto, the plaintiff and defendants attorneys became aware of this inadvertent court administrative error, to wit, that the file was transferred and there was no need to start a new action, Judge Demhust who was presiding over the 196/2014 Kings Action recused herself on April 12, 2015 as per the Order of the Admin Judge Knipel for him to take the file. **(Exhibit "K")** which was already indexed months ago, prior to anyone's knowledge, by the Kings County Clerk under Index Number 9279/2014.

36.    That despite have made three motions to compel the attorneys for defendant SHAH to comply with discovery demands in the Queens County Forum, including the defendants non compliance of a Preliminary Conference Order **(Exhibit "L")**, Knipel in his campaign to delay the case for his colleagues nephew (unknown to plaintiff at the time and knowing the plaintiff was with failing health), Ordered a New PC Conference which was said PC Order set forth that defendant SHAH was to comply with all discovery demands by February 9, 2016 **(Exhibit "M").**

6

37.    Unknown to the plaintiff at that time, defendant SHAH's attorney  upon information and belief, "Tomei" had an Uncle who was a Supreme Court Kings County Judge whom the presiding Judge Knipel was a friend and colleague of being behind the bench at the same time and place, to wit, Kings Supreme Criminal with the defendant's attorney Uncle which was the purpose of said Judge taking the file from the previous presiding Judge, being the Administrative Judge with the authority to do so in order to *"Tip the Scale"* to the defendants attorney in an attempt to have him win the case which the evidence was piled against his client.

38.    That defendant SHAH's attorney again failed to comply with the Order of the Court and while plaintiff was drafting his fourth motion to compel discovery, defendants attorneys, as a novel means to not disclose any information on the defendant SHAH's Whitehall Store filed for Summary Judgment which was granted by the corrupt judge Knipel. (This Order was in violation of a prior Appeal in which the plaintiff won which stated he had properly pleaded and had a cause of action for tortious interference with his contract by defendant SHAH and was done as another tactic between the Judge and his friends nephew to stall and delay the case to increase distress upon the plaintiff to damage his already failing health more and Kinpel was actually in contempt of the Appellate Divisions Order).  This prejudicial conspiracy between the Judge and defendants attorney Tomei continued for approximately seven (7) years.

38.    That plaintiff being obstructed by the presiding Judge Knipel in his campaign to aid the other Judge's nephew, whom he was friends with, could not obtain any discovery or information on SHAH's Whitehall Store as well as other acts of misconduct, as a result of the Instant Stay which is put into place when Summary Judgment Motions are made and pending.

39.    That on August 12, 2020 the Appellate Division, Second Department overturned the crooked Judge's Order which as it was already decided by the Second Department which Knipel

ignored said Order (conterminous conduct) and again stated plaintiff had properly plead and can maintain a cause of action against defendant SHAH for tortious interference. Said Appellate Division Decision and Order also awarded the plaintiff the cost of the Appeal. Against defendant SHAH and her WHITEHALL PRETZEL store **(Exhibit "N").**

40.    That during the time of the automatic stay pending the Appeal Decision as stated, An Inquest/Proof Hearing was held against Chapel Banks, the owner of "The Mark" of Different Twist Pretzel, Inc.) (Note: Chapel was not the owner as the defendants in that matter fraudulently transferred "the Mark" to another corporation three (3) weeks prior to plaintiff signing the same. **(Exhibit "O").**

41.    That since the NYCEDC was no longer using Apple Industrial and in a "leap of faith" after he received the August 12, 2020 Second Department Order restoring the case to the trial calendar, plaintiff on February 16, 2021 filed a FOIA request with the NYCEDC for the documents pertaining to defendant SHAH's Whitehall Store and on March 12, 2021, to plaintiff's surprise the EDC, seeing that a Judge in the case issued a Subpoena for the plaintiff advised him that they would comply with the request to spare the Court and Corporation Counsel the burden of being subpoenaed again. **(Exhibit "P").**

42.    That said FOIL from NYC EDC revealed that the defendant SHAH assigned her WHITEHALL PRETZEL lease to her husband with a different last name, to wit, SEHGAL" under a Corporation which he formed on October 3, 2013 **(Exhibit "Q")** on or about September 19, 2014 **(Exhibit "R").**

43.    Said fraudulent transfer was done in an obscure manner as the defendants knew that the Appeal in question was pragmatic and plaintiff would win and proceed to Trial against the defendant SHAH and Whitehall, and the defendants knew that the evidence stacked against them

would lend itself to the plaintiff wining at the trial against SHAH and Whitehall and the plaintiff

subsequent thereto obtaining a Judgment in an amount of approximately $600,000.00 concealed

this fraudulent transfer. (The evidence of this is identified and stated further herein).

44.    That the same was done while the NY Appellate Division was reviewing plaintiff's

Appeal in which a Decision and Order was rendered TWO MONTHS after said fraudulent

transfer on December 17, 2014 in which a judgment against defendant SHAH and WHITEHALL

PRETSEL was entered on  **July 2, 2015.  (Exhibit "S").**

45,    The concealment in question is clearly evidenced as from August 18, 2015 to July 27,

2016 NY City Marshal Beinstock executed on said Judgment **(Exhibit "T")** on the defendant

SHAH's property to wit, WHITEHALL PRETZEL & Ice Cream, Inc. in the Staten Island Ferry

Terminal.  At said time which the defendant SHAH duly paid NYC Marshal Beinstock to satisfy

the Judgment plaintiff had against her and the store, during a time which the transfer of the store

to the defendant husband SEHGAL's corporation IMPECCABLE.

. 46.    That the defendants paid the same in order not to arise.  bring any attention to, or raise

any suspicion of the fraudulent transfer between the defendants of the stores lease and assets as

they knowingly that the plaintiff would, in time, would obtain a far substantial judgment on

SHAH and WHITEHALL PRETZEL & Ice Cream, Inc. and this was to "distort" and "conceal"

that the fraudulent transfer to City Marshal Beinstock.

47.    That this is evidenced by Marshal Beinstock in his attempts to once again execute upon

the judgment of the cost of the second appeal on SHAH and her Whitehall store as the Marshall

had done in the past, however this time the Marshall was unsuccessful the defendants and/or

their employees being instructed by the defendants to advise NYC Marshal Beinstock that

WHITEHALL PREZEL no longer owned the store and IMPECCABLEZ owned the store, a

corporation of the defendant SHAH's husband defendant SEGHAL herein and that NYC

Marshal Beinstock was further advised that "They never heard of defendant SHAH".  (See

**Exhibit "U" NYC Marshal Beinstock's <u>May 28, 2021</u> Property Execution Notes).**

48.     This was done as the plaintiff's trail against defendant SHAH is about to commence in

Supreme Kings in which the defendants know that the plaintiff will be successful as the evidence

is overwhelming and their lawyer could no longer stall the matter as the crooked judge recused

himself (but is still influencing the case) and the matter is about go to trial within a few weeks

from the date of this Complaint.  **(See Exhibit "V").**

49.     That the plaintiff having filed his Note of Issue for the trial against SHAH and

WHITEHALL PRETZEL cannot now amend his complain as the 90 time limit to withdraws his

Notice of Issue for the trial has expired, giving the defendants the opportunity to now refuse to

pay the Marshal and leaving the plaintiff with the inability to enforce the money judgment

against SHAH and WHITEHAL PRETZEL

50.     That the defendants own several other stores which are Auntee Anne Pretzel stores and

Newsstands located in the State of Virginia **(Exhibit "W"),** a portfolio worth upon information

and belief approximately $1,200,000i s is further evidenced as the defendants own several

"IMPECCABLE BAKES" named corporations in Virginia which have recently been showing a

slow change of ownership lately **(Exhibit "W.**

51.     More speciously, the defendants have now just formed yet another IMPECCABLE

BAKES Corporation **(Exhibit "X")** approximately four months before the trial date of defendant

SHAH which appears that the defendants are going to transfer and hide assets under the

husband's name and deny any association as they have done to the NYC Marshal Beinstock as

his notes clearly indicate they done and are doing.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THE DEFENDANTS AVOIDANCE
## OF THE TRANSFER OF THE LEASE AND STORE
## FROM WHITEHALL PRETZEL & ICE CREAM, INC.
## TO IMMPECCABLE BAKERS, INC. AS INTENTIOAL
## FRAUDULENT CONVEYANCE PURSUANT TO
## SECTION 276 OF THE NY DEBTOR & CREDITOR LAW

### "THE BADGES OF FRAUD ARE APPLICABLE"

52. Plaintiff re-alleges the allegations set forth above and incorporates same herein as if more fully set forth at length and by reference.

53.    That pursuant to the compliance by the EDC of plaintiff's request plaintiff was informed that on July 28, 2014 the defendants signed an Assignment and Assumption of Lease document which is dated two months later, to wit, September 19, 2014, assigning the WHITEHALL PRETZEL Lease of defendant SHAH as President thereof, to a new corporation IMPECCABLE which defendant SEHGAL is the President thereof.

54.    Subsequent thereto on September 19, 2014 the NYCEDC provided the defendants with a First Amendment and Landlord Consent to Assignment and Assumption of the aforesaid Assignment

55.    That the defendants, in order to conceal the transfer information of the Leasehold from defendant SHAH to defendant SEHGAL, on or about August 18, 2015, a period of approximately Eleven (11) months after defendant SHAH's corporation was no longer the owner of the leasehold and fixtures of WHITEHALL PRETZEL and that defendant SEHGAL's new corporation now owner the Leasehold and store, defendants paid the plaintiff the judgment that was issued against Whitehall (a closed corporation).

56. That the transfer was made by the defendants with actual intent to hinder, delay or defraud the plaintiff, a future creditor and as such is voidable pursuant to § 276 of the New York Debtor & Creditor Law and may be recovered from the Defendants.

57. That there is a clear showing that defendants are in a relationship.

58. That there is a clear showing that each of the defendants uses his/her surname, to wit "SHAH" and "SEHGAL" to deceive, cover up, hide, hinder the husband and wife relationship between the defendants. and the transfer and their retention of possession of the business for the benefit or use of the property in question by the transferor for said financial benefit (before and after the transaction) of the defendants show fraudulent intent; The existence and showing of the general chronology of events and transactions under inquiry herein show that a this is a questionable transfer and was not done not in the usual course of business; and the defendants used secrecy, haste or unusualness of the transaction.

59. That the transfer of Whitehall to IMPECCABLE was done as an "insider" as it is a closely held corporation and was done to capitalize it and was done while the debtors "waters were calm". and the transfer was not equivalent to its value had it been sold on the open market.

60. That the transfer by SHAH and WHITEHALL PRETZEL to SEHGAL and his corporation IMPECCABLE was substantially all of the assets of SHAH, under her maiden name.

61. That the defendants did the same to clearly abscond the transfer from the plaintiff.

62. That the value of the consideration received by defendant SEHGAL and IMPECCABLE was not reasonably equivalent to the value of the assets transferred or the amount of the obligation SHAH knew she would incur.

63. Said transfer was done to hide assets the subject of a future debt collection, as the following is applicable:

A.    There is a relationship between the parties;

B.    The Transfer was done Outside the Ordinary Scope of Business;

C.    There was inadequate Consideration. As the value of the considerate which was received by defendant SHAH by defendant SEHGAL was not reasonably equivalent to the value of the assets transferred and/or the amount of the anticipated obligation to be incurred.

D.    The defendant had knowledge of the plaintiff's future claim; and

E.    That the defendants both have the Retention Of and Control of the Property.

64.    That the transfer does not meet the "reasonably equivalent value" standard, and as such removing consideration of intent there is a showing of a constructive fraudulent transfer.

65.    That during the course of all proceedings, the defendants have used every obstacle including disobeying court orders to show this transfer.

66.    That such facts show the defendants had both (1) the motive and the opportunity to commit fraud; and/or (2) "constitute strong circumstantial evidence of conscious misbehavior or recklessness."

67    Plaintiff relies upon "badges of fraud" to support his case in that the defendants' intent was and is to hinder, delay, or defraud plaintiff a future creditor. As clearly the evidence presented herein by the NYC Marshal clearly shows.

68.    That there is a clear showing and this matter gives rise to an inference of intent. "Is immaterial where the transferor has the actual intent to hinder, delay, and defraud creditors" and that the parties are related.

69.    That the transfer had transferred has value out of which the plaintiff can realize upon his claim.

70.    That the transfer was disposed of by the defendant SHAH to SEHGAL, was done knowing that plaintiff was a future creditor. This is evidenced herein.

71.    That the transfer was done with the actual intent to defraud.

72.    The evidence demonstrate that defendants had (1) both the motive and the opportunity to commit fraud; and/or or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness

73.    By reason of the foregoing, the plaintiff is entitled to judgment against the Defendants in the sum of Five Million ($5,000,000.00) Dollars or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the defendant SHAH and WHITEHALL PRETZEL together with  pre-judgment interest and costs and expenses, including reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT

74.    Plaintiff re-alleges the allegations set forth above and incorporates same herein as if more fully set forth at length and by reference.

75    Upon information and belief, the defendants did not receive any, or adequate, consideration in connection with the Transfers.

76.    Upon information and belief, in contrast, the defendants unfairly benefitted by receiving and retaining the Transfer, and have been unjustly enriched thereby.

72.    By reason of the foregoing, the plaintiff is entitled to judgment against the Defendants in the sum of Five Million ($5,000,000.00) Dollars or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the defendant SHAH and WHITEHALL

PRETZEL together with pre-judgment interest and costs and expenses, including reasonable attorneys' fees.

## AS AND FOR A THIRD CAUSE OF
## ACTION FOR PUNITIVE DAMAGES

77.      Plaintiff re-alleges the allegations set forth above and incorporates same herein as if more fully set forth at length and by reference.

78.      By reason of the foregoing, the plaintiff is entitled to judgment against the Defendants in the sum of Five Million ($5,000,000.00) Dollars or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the defendant SHAH and WHITEHALL PRETZEL together with pre-judgment interest and costs and expenses, including reasonable attorneys' fees.

**WHEREFORE,** plaintiff seeks judgment as follows:

On the First Cause of Action the sum of Five Million Dollars ($5,000,000.00) Dollars or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the defendant SHAH and WHITEHALL PRETZEL together with pre-judgment interest and costs and expenses, including reasonable attorneys' fees.;

On the Second Cause of Action the sum of Five Million ($5,000,000.00) Dollars  or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the defendant SHAH and WHITEHALL PRETZEL together with pre-judgment interest and costs and expenses, including reasonable attorneys' fees;

On the Third Cause of Action the sum of Five Million ($5,000,000.00 Dollars or an amount three times (treble damages) of the sum plaintiff is awarded at the State Trial of the

defendant SHAH and WHITEHALL PRETZEL together with  pre-judgment interest and costs

and expenses, including reasonable attorneys' fees.

 Together with such other and further relief this court deems just and proper herein

Dated: October 18, 2021                                    Yours, etc.,

                                                           Wayne Rose
                                                           Plaintiff/ Pro Se.
                                                           760 Eldert Lane, #6S
                                                           Brooklyn, NY 11208
                                                           (347) 789-6425
                                                           *Wayro7@aol.com*

16

# NYS Department of State

# Division of Corporations

### Entity Information

The information contained in this database is current through April 12, 2021.

Selected Entity Name: DIFFERENT TWIST PRETZEL OF NY, INC.

Selected Entity Status Information

Current Entity Name: DIFFERENT TWIST PRETZEL OF NY, INC.
DOS ID #:   3190312
Initial DOS Filing Date: APRIL 12, 2005
County:   QUEENS
Jurisdiction:   NEW YORK
Entity Type:   DOMESTIC BUSINESS CORPORATION
Current Entity Status:   INACTIVE - Dissolution by Proclamation / Annulment of Authority (Apr 27, 2011)

Information to reinstate a corporation that has been dissolved by proclamation or annulment of authority by proclamation is available on the New York State Department of Taxation and Finance website at www.tax.ny.gov keyword TR-194.1 or by telephone at (518) 485-6027

Selected Entity Address Information

DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
DIFFERENT TWIST PRETZEL OF NY, INC.
227 BEACH 86TH STREET
ROCKAWAY, NEW YORK, 11693

NONE                              **Registered Agent**

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors,

and shareholders in the initial certificate of
incorporation, however this information is not recorded
and only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

\*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| APR 12, 2005 | Actual | DIFFERENT TWIST PRETZEL OF NY, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

EXHIBIT B

FROM :                          FAX NO. :                          J   20 2003 12:36PM  P2



## MASTER LICENSE AGREEMENT

THIS AGREEMENT is dated as of the ____25th____ day of May, 2005_____ between Chapel Banks Investment, Inc., a Pennsylvania Corporation ("Licensor") and a limited liability company ("Licensee").

WHEREAS, through the expenditure of time, effort, and money by Licensor, Licensor has acquired skill in the development and operation of retail units specializing in the sale of pretzel products; and

WHEREAS, Licensor has developed recipes for pretzel dough mix which are confidential and proprietary to Licensor (the "Mix"); and

WHEREAS, Licensor is the owner of the service mark and trade name, "The Different Twist Pretzel Co." and the logo which appears on Schedule A (the "Mark"); and

WHEREAS, Licensee desires to operate a retail unit specializing in the sale of pretzel products made from the Mix under the Mark and subject to the terms and conditions set forth in this Agreement.

WHEREAS, subject to the terms and conditions of this Agreement, Licensor is willing to grant a license to Licensee to operate such Units.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the parties hereto agree as follows:

EXHIBIT  B

FROM :                          FAX NO. :                    22 2003 12:37PM  P3

Section 1.    The License

    1.1    Licensor hereby grants to Licensee the right to develop and operate in the State of New York subject to the terms and conditions of this Agreement.

        A.    This agreement does not include the shop at the Walt Whitman Mall on Long Island.

Section 2.    Fees

    2.1    In consideration of the grant of License herein, Licensee shall pay to Licensor the following amounts:

        (a)    Upon execution of this Agreement, the License fee of $5,000.00 will be paid on the first Unit opened, and $5,000.00 on any other Units opened by Licensor. Licensee will pay 5% of the gross sales on all Units opened by Licensee.

    2.2    Licensee shall keep accurate accounts and records of all business transactions of Licensee and each Unit operated by Licensee. Licensor may in its sole discretion conduct periodic examinations of such accounts and records, upon 15 days advance written notice to Licensee, for the sole purpose of determining whether Licensee has submitted payments in accordance with this Section 2.

Section 3    Term and Renewal

    3.1    The license herein granted shall commence on the date hereof and continue thereafter for a period of 15 years, unless terminated sooner in accordance with the terms and conditions of this Agreement.

    3.2    So long as Licensee has complied with and is not in default of any of the terms and conditions of this Agreement or any other agreement in effect between Licensee and Licensor, or between Licensee and any affiliate of Licensor, then at the expiration of the term hereof, Licensee may renew this Agreement for an additional term of 10 years, provided, however, that the parties mutually agree on a development schedule for the Territory for the additional term.

FROM :                         FAX NO. :                    25 2003 12:36PM  P4

Section 4    Development of Units

4.1    Licensee shall open and operate, or sublicense to others the right to open
and operate, [illegible] ......................................................................
12 month period .......................................................................... Licensee
at [illegible] ............................................................................
....................................................................................................
it is the intention of the parties that the number of Units set forth above
shall represent the number of additional Units to be opened during such
12 month period and remain in operation by the end of such 12 month
period. Any Unit that closes or is terminated during the term hereof shall
be subtracted from the total Units deemed to be opened in a 12 month
period hereunder; any Units opened during a 12 month period which
exceed the number required hereunder may be used to fulfill the required
number of Units in the subsequent 12 month period. Licensor shall
furnish Licensee with all inquiries it receives regarding Units within the
Territory.

4.2    In the event Licensee fails to develop the Territory in accordance with this
Agreement, Licensee's rights hereunder shall no longer be exclusive in
the Territory, and Licensor shall be free to develop Units in the Territory,
or to license others the right to develop such Units, either directly or by
sublicensing third parties, at any location either inside or outside the
Territory. Licensee will, however, retain all rights to those Units as
previously established and/or subleased under the terms of this
Agreement. With the exception of the right to the Territory, Licensee and
Licensor will be bound by all other terms of this Agreement.

4.3    In the event Licensee sublicenses other the right to open Units in the
Territory, Licensor shall require each Sublicensee to execute a
sublicense agreement in form satisfactory to Licensor which provides for
(i) protection of the Marks, (ii) confidentiality of the proprietary
information, and (iii) the purchase of pretzel dough mix in accordance
with Section 5 hereof.

4.4    Licensee agrees that at some future date the Territory, as set forth in this
Agreement, may preclude development of Units whether economically,
geographically, or demographically, either singularly or collectively. At
such time as this occurs, by mutual agreement between Licensee and
Licensor, Licensee will be granted the right to retain those Units as
previously established and/or subleased under the terms of this
Agreement. Licensee, however, will no longer have the right to the
Territory. With the exception of the right to the Territory, Licensee and
Licensor will be bound by all other terms of this Agreement.

**Section 5**    **Product Purchase**

5.1    Licensee shall sell only and/or products made from The Different Twist Product Mix at the Units. Licensee shall purchase from Licensor of Licensor's designee, and maintain sufficient quantities of the Mix at each Unit to meet the demand of customers of each such Unit. Such quantity is to be mutually agreed upon by Licensor and Licensee.

5.2    Payment on all invoices is due net 30 days. Licensee will receive a 1% discount on all invoices paid within 10 days of delivery.

**Section 6**    **Termination**

6.1    Upon written notice to Licensee, Licensor may immediately terminate this Agreement upon the occurrence of any of the following events:

(a)    If Licensee:

(i)    makes an assignment for the benefit of creditors, or a written admission of inability to pay its debts or obligations as they become due, or becomes insolvent, is adjudged a bankrupt, or if a petition in bankruptcy is filed against it;

(ii)    seeks, consents to, acquiesces in or permits the appointment by or on behalf of a creditor of any manager, trustee, receiver or liquidator of Licensee, or all or a substantial part of its assets, or fails to vacate the appointment of any manager, trustee, receiver or liquidator for any such purpose within 15 days of such appointment;

(iii)    defaults in the payment of any amount required to be paid to licensor whether under this or any other agreement made between Licensor and Licensee or between any affiliate of Licensor and Licensee;

(iv)    assigns or attempts to assign this Agreement or any rights hereunder without obtaining the assignee's prior written assumption of Licensee's obligations hereunder;

(v)    discloses any trade secrets provided to Licensee by Licensor to the detriment of Licensor, or any of its affiliates, or commits any act which, in the sole opinion of Licensor, would bring the Mark or Licensor into public disrepute, scandal or ridicule, or makes any unauthorized use of the Mark; or;

FROM :                          FAX NO. :                        26 2003 12:39PM  P6

(v)     fails to develop and keep open and operating the required
        number of Units within the Territory in accordance with
        Section 4 hereof.

(ii)    If Licensee defaults in the performance of any of its obligations
        under the terms of this Agreement other than those referred to in
        Section 6 (a) above, Licensor shall have the right to terminate this
        Agreement upon 30 days written notice to Licensee, and such
        notice of termination shall become effective unless Licensee shall,
        to the reasonable satisfaction of Licensor, remedy such default
        within such 30 day period.

6.2     Upon any termination or expiration of this Agreement, the following terms
        and conditions shall apply:

(i)     Licensee shall pay to Licensor within 30 days after the effective
        date of termination or expiration of this Agreement all amounts
        owed pursuant to this or any other agreement between Licensor
        (or any affiliate of Licensor) and Licensee which are then unpaid.

(ii)    Licensee shall immediately return to Licensor all copies of
        information provided by Licensor concerning the operation of Units
        under the Marks, and all other written materials and other
        proprietary information which have been loaned or provided to it by
        Licensor.

(iii)   Licensee shall at its sole expense within 15 days make such
        removals or changes in signs and colors as Licensor shall
        reasonably request so as to distinguish effectively the Units from
        their former appearance and from any other Units. If Licensee
        shall fail to make such changes within the specified time, then
        Licensor may enter upon such premises and make such changes
        at Licensee's expense, and Licensor's conduct shall not be
        considered a trespass nor shall Licensor be held liable for any
        damages as a result thereof.

(iv)    If this Agreement expires or is terminated for any reason, Licensee
        shall not, for a period of 2 years commencing on the effective
        date of termination or expiration of this Agreement, engage as an
        owner (except of companies whose securities are publicly traded
        and listed), partner, director, officer, employee, consultant,
        investor, representative or agent, or in any other capacity, in any
        other restaurant, store or business selling related products located
        within a radius of 5 miles of the Territory or any other Unit
        operating under the Mark.

(e)    Licensor agrees to purchase from Licensee any unopened Mix in Licensee's possession on the fifteenth day after termination at the price which Licensee paid for the Mix, less 50% exclusive of taxes. The price which Licensee paid shall be determined by the invoice and/or invoices which match the Mix in Licensee's possession on the fifteenth day after termination.

## 7    Assignment and Transfer

7.1    Either party to this Agreement shall be entitled to assign any or all of its rights hereunder to any person, partnership, association, corporation, or other entity, provided that the assignee or transferee shall agree in writing to assume all obligations of the assigning or transferring party relating to matters assigned. Upon such assignment and assumption, the assigning or transferring party shall be under no further obligation with respect to the matters so assigned, but shall remain liable for its breaches and for indemnity obligations then unpaid under this Agreement to the date of assignment or transfer.

7.2    The parties acknowledge that they do not intend to create a franchise relationship hereunder, and Licensee's obligations to Licensor hereunder are intended (i) to compensate Licensor for the use of the Mark, and (ii) to maintain the quality of products and services sold under the Mark solely to protect Licensor against loss of service mark or trademark rights as a result of inadequate quality control. In the event that Licensee authorizes third parties to operate Units under the Mark, Licensee shall, at its sole expense, comply with all applicable laws, and shall indemnify and hold harmless Licensor against violation.

## 8    Relationship of Parties

8.1    The parties acknowledge and agree that Licensee is an independent contractor operating under license from Licensor. Licensee shall conspicuously identify itself on the premises of the Units and in all dealings with others as the owner of the Units. Neither Licensor nor Licensee shall make any agreements, representations or warranties in the name of or on behalf of the other or that their relationship is other than Licensor and Licensee, nor shall Licensor be obligated for any damages to any person or property directly or indirectly arising out of the operation of the Units, or Licensee's business conducted pursuant to this Agreement, whether caused by Licensee's negligent or willful action or failure to act. Licensor shall have no liability for any sales, use, excise, transfer, property or other taxes levied upon the Units or their assets or in connection with the services performed or sales made or business conducted at the Units. Licensee shall indemnify Licensor against and shall reimburse Licensor for all such obligations, damages and taxes for

which it is held liable and/or all costs reasonably incurred by Licensor in the defense of any such claim brought against it or in any action in which it is named as a party, including, without limitation, reasonable attorney's fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses. Licensor shall have the right of defend any such claim against it. The indemnities and assumptions of liabilities and obligations herein shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

## Section 9.    Injunctive Relief

9.1    The parties acknowledge and agree that the rights of Licensee under this Agreement are of a specialized and unique character and that irreparable damage will result to Licensor if Licensee fails or refuses to perform its obligations under this Agreement. Therefore, in addition to any other rights which it may have at law or in equity, Licensor shall be entitled, without action when the law permits, or with bond in compliance with the law, to temporary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement relating to Licensee's use of the Mark, Licensor's confidential and proprietary information, the obligations of Licensee upon termination or expiration of this Agreement, and to prohibit any act or omission by Licensee which constitutes a breach of this Agreement or a violation of any applicable law, ordinance or regulation, or which is dishonest or misleading to customers or prospective customers of the Units, or to other Units operated by Licensee or Licensor, or by Sublicensees, or constitutes a danger to the employees or customers of the Units, or to the public, or may impair the goodwill associated with the Mark and Units. If Licensor secures any such injunction or order of specific performance, Licensee shall pay to Licensor an amount equal to the aggregate of its cost of obtaining such relief, including without limitation reasonable attorney's and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, and any damages incurred by Licensor as a result of the breach of any such provision.

## Section 10.    Other Rights of Licensor

10.1    Licensor has obtained registration of the service mark "The Different Twist (the Logo Co)" on the Principal Register of the U.S. Patent and Trademark Office as shown on Schedule A to this Agreement. The Mark is not registered in any state or in any other jurisdiction.

10.2  To the best of Licensor's knowledge, no claims or demands have been made by any third parties pertaining to the Mark and no proceedings have been instituted or are pending or threatened which challenge the rights of Licensor in the Mark. The Mark is not subject to any outstanding order, decree, judgement, stipulation, injunction, restriction or agreement restricting the scope of use of the Mark by Licensor, except other license agreements entered into by Licensor.

10.3  Licensor covenants with Licensee that no license agreement between Licensor and any third party restricts Licensor's right to enter into this Agreement. Licensor further covenants with Licensee that this Agreement and Licensee's use of the Mark in the Territory as contemplated hereunder will not infringe upon the rights of any other licensee or Licensor.

10.4  Licensee will keep confidential during the term of this Agreement and at all times following the termination of this Agreement any data, knowledge, or other information ("Confidential Material") of any kind acquired by Licensee during the term hereof concerning the business affairs of Licensor and shall not, without the prior written consent of Licensor, disclose or make such Confidential Material available to any third party.

10.5  Licensor represents that [illegible] Maggio is an officer of Licensor with requisite authority to enter into this License Agreement on behalf of Licensor.

10.6  Licensor shall sell to the Licensee a quality product using proper packaging. The Licensor guarantees the ingredients of the Mix will be equal to or better than the original recipe.

Section 11  Obligations of Licensee

11.1  Licensee shall not during the term of this Agreement have any interest as an owner (except of companies whose securities are publicly traded and listed), partner, director, officer, employee, consultant, investor, representative or agent, or in any other capacity, in any other restaurant, store or business selling similar products (except other Units operated under license agreements heretofore or hereafter entered into between Licensee and Licensor) at any location without the prior written approval of Licensor.

[illegible]

FROM :                              FAX NO. :                                        Jul. 29 2003 12:42PM  P10

11.2   Licensee shall keep confidence at all times during the term of this Agreement, and thereafter any data, know-how or other information of any kind acquired by Licensee regarding the business of Licensor and shall not disclose, use or make available such information to any third party in any manner whatsoever, and Licensee shall not attempt to analyze or duplicate the Mix.

Section 12   Miscellaneous

12.1   All provisions of this Agreement are severable and this Agreement shall be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein and all partially valid and enforceable provisions shall be enforced to the extent valid and enforceable. If any applicable and binding law or rule or any jurisdiction requires a greater prior notice of the termination of or refusal to renew this Agreement than is required hereunder or the taking of some other action not required hereunder, or if under any applicable and binding law or rule of any jurisdiction, any provision of this Agreement is invalid or unenforceable, the prior notice and/or other action required by such law or rule shall be substituted for the notice requirements hereof, or such invalid or unenforceable provision shall be modified to the extent required to be valid and enforceable.

12.2   All of such notices permitted or required to be delivered pursuant to this Agreement shall be deemed so delivered 5 days after being placed in the United States mail be Registered or Certified Mail, Return Receipt Requested, postage prepaid and addressed to the party to be notified at its most current principal business address of which the notifying party has been notified.

12.3   No acceptance by Licensor of any payment by Licensee and no failure, refusal or neglect of Licensor or Licensee to exercise any right under this Agreement or to insist upon full compliance by the other with its obligations hereunder shall constitute a waiver of any provision of this Agreement.

12.4   Licensee shall not under any circumstances withhold payment of any amounts due to Licensor under this Agreement or under any other agreement in effect between Licensor and Licensee, or between any affiliate of Licensor and Licensee, for products purchased by Licensee, or any other amounts due Licensor or its affiliates hereunder.

12.5   The rights of Licensor and Licensee hereunder are cumulative and no exercise or enforcement by Licensor or Licensee of any right or remedy hereunder shall preclude the exercise or enforcement by Licensor or Licensee of any other right or remedy hereunder, at law or in equity.

12.6    Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C.A. §1051 et seq.), this Agreement and the license granted hereunder shall be governed by the laws of the Commonwealth of Pennsylvania. The parties agree to consent to the jurisdiction and venue of the State and Federal Courts in Allegheny County, Pennsylvania, and the parties further agree that any judgement may be enforced in any other jurisdiction.

12.7    All obligations of Licensor and Licensee which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement and until they are satisfied in full or by their nature expire.

12.8    This Agreement is binding upon the parties hereto and their respective executors, administrators, heirs, successors, and assigns.

12.9    No amendment or other modification of this Agreement shall be valid or binding on either party hereto unless reduced in writing and executed by the parties hereto.

12.10   The preambles, recitals, and Schedules hereto are part of this Agreement, which constitutes the entire agreement of the parties. There are no other oral or written understandings or agreements between Licensor and Licensee relating to the subject matter of this Agreement. The headings of the several paragraphs hereof are for convenience only and do not define, limit or construe the contents of such paragraphs. The term "Licensee" as used herein is applicable to one or more persons, a corporation or a partnership, as the case may be, and the singular usage includes the plural and the masculine and neuter usage include the other and the feminine.

FROM :                    FAX NO. :                    . 20 2003 12:43PM  P12

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have executed and delivered this Agreement as of the day and year first above written.

ATTEST:                                        CHAPEL BANKS INVESTMENT, INC.

By: _____                     By: _____

Title: _____                    Title: _____

ATTEST: _____ Trust Rachel Co o p N T Inc.

By: _____                     By: _____

Title: _____                    Title: _____

(a) Defined:

4.1(a)(1) In-Line Store. "In-Line Store" shall be considered those units, which are "stand alone" units.

4.1(a)(2) C-Store. "C-Store" shall be considered those stores, which are co-branded with other stores such as Subway, Blimpie, Gas Stations, etc.

Notwithstanding anything contained in Section 2.1(a) to the contrary, the License fee for "C-Stores" shall be $2,500.00, which sum shall be divided equally between Licensor and Licensee. Royalty fees shall be divided equally between the parties as provided for in Section 3 herein.

4.1(a)(3) Wholesale Accounts. It is agreed upon by the parties hereto that The [illegible] Trust Pretzel of NY, Inc. shall have the right to provide wholesale services to a customer base it builds. There shall be no Licensing fees payable with respect to such wholesale services, however the applicable Royalty fees shall be divided equally between the parties.

(b) Development:

Licensee shall open and operate, or sublicense to others the right to open and operate, a minimum of two (2) additional In-Line Units (or equivalents) in the Territory during each successive 12-month period of the term of this Agreement following the initial 12-month period after the opening of the St. George Terminal. Any additional operators opened in the Staten Island Ferry Terminals shall be considered a fulfillment as defined above.

At all times herein, Licensee shall be considered having met [illegible] of development obligations by maintaining a fleet of at least ten (10) In-line units or equivalents as defined herein.

Every two "C-Stores" shall be considered one (1) "In-Line" Unit.

Every two "Wholesale Accounts" shall be considered one "In-Line" Unit. However, in the event any "Wholesale Account" exceeds sales beyond $200,000 per annum then, in such event, said account shall be considered one (1) "In-Line" Unit.

It is the intention of the parties that the number of Units set forth above shall represent the number of additional units to be opened during each 12-month period and maintain in operation by the end of such 12-month period. Any Unit that closes or is terminated during the term hereof shall be subtracted from the total Units deemed to be opened in the following 12-month period hereunder; any Units opened during a 12 month period which exceed the number required thereunder may be used to fulfill the required number of Units in the subsequent 12 month periods. Licensor shall furnish Licensee with all inquiries and leads it receives regarding Units within the Territory.

The foregoing hereby replaces Section 9.2(d) of the Master License Agreement.

## Section 5.     Terms of Purchase

5.1.    Payment on all invoices is due net 10 business days. Licensee will receive a 1% discount on all invoices paid within 10 business days of deliver.

Licensee shall receive a 1% discount if payment (s) are made within 30 days, after one year from its first store opening, Licensee having paid all statements on due and being in full compliance with this agreement.

## Section     6.(a)(i)

If this agreement expires or is terminated for any reason, Licensee shall not, for a period of 2 years commencing on the effective date of termination or expiration of this Agreement, engage in or own or be operator in any nationally recognized "pretzel" operation which is a competitor of Licensor doing business under the Mark within a radius of 5 city blocks with respect to any of Licensor's store locations in New York City and 5 miles of any of Licensor's new locations in this New York State but outside of New York. Sign except that the foregoing shall not be deemed to restrict Licensee with respect to pretzel store locations which, when first opened or when Licensee first becomes an owner or operator thereof, do not violate the foregoing radius restrictions and as to which Licensee thereafter opens a store location.

## Section 7.     Assignment and Transfer

7.1    Notwithstanding anything contained in the printed portion of the agreement, each party shall respectfully afford the other a "right of first refusal" on any sale other than to immediate family members.

FAX NO. :                            28 2003 12:45PM P16

IV.    Notices

Notices to Licensee shall be sent to the following address:  c/o Mr. Wayne Rose, 227 Beach 96th Street, Rockaway Beach, NY 11693 or to such other address as Licensee may hereafter designate in writing to Licensor.

Notices to Licensor shall be sent to the following address:  Chapel Banks Investment, Inc., P.O. Box 534, Bakerstown, PA 15007

In addition, Chapel Banks Investment, Inc. agrees that it shall forward all prospective licensing inquiries for the State of New York as well as retail space submissions to Different Twist of NY, Inc. for its regulance.

CHAPEL BANKS INVESTMENT, INC.

By: _____
Peter Maggio

DIFFERENT TWIST PRETZEL OF NY, INC.

By: _____
Wayne Rose

FAX NO. :                    JL. 20 2003 12:45PM  P17



■ Complete items 1, 2 and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Received by (Please Print Clearly)  |  B. Date of Delivery
                                       |  JUL 18 2005

C. Signature
X                                      ☐ Agent
                                       ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

1. Article Addressed to:

   Mr. Wayne Rose
   227 Beach  86th Street
   Rockaway Beach, NY  11693

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from
   service label)              7004 2510 0007 1005 1119

PS Form 3811, July 1999      Domestic Return Receipt      102595-99-M-1789



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

Postage      $   1.06
Certified Fee    2.30
Return Receipt Fee
(Endorsement Required)   1.75
Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $   5.11

7004 2510 0007 1005 1119

JUL 08 2005

Sent To
   Mr. Wayne Rose
Street, Apt. No.;
or PO Box No.  227 Beach  86th Street
City, State, ZIP+4
   Rockaway Beach, NY  11693

EXHIBIT C

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through April 12, 2021.

Selected Entity Name: WHITEHALL PRETZEL & ICE CREAM INC.
Selected Entity Status Information

**Current Entity Name:** WHITEHALL PRETZEL & ICE CREAM INC.
**DOS ID #:** 3201465
**Initial DOS Filing Date:** MAY 06, 2005
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information
**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
WHITEHALL PRETZEL & ICE CREAM INC.
SIX WATER STREET
SUITE 303
NEW YORK, NEW YORK, 10004
**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include the
name(s) and address(es) of the initial officers, directors,
and shareholders in the initial certificate of
incorporation, however this information is not recorded
and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| MAY 06, 2005 | Actual | WHITEHALL PRETZEL & ICE CREAM INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

EXHIBIT D

AGREEMENT TO ENTER AN AGREEMENT

This agreement dated June    , 2005 between Reshma Shah and Wayne Rose the holder of the Master Development rights in New York for Different Twist Pretzel Company from the owner Chapel Foods Investments, Inc. by his company Different Twist Pretzel Company of NY, Inc. for the purpose of opening a store(s) in the Staten Island Ferry Terminal(s) in which Reshma Shah or her company Whitehall Pretzel & Ice Cream, Inc. agrees to enter into a separate agreement with Chapel (Different Twist Pretzel Company) and understands she will be a sublicensee of Wayne Rose and/or his company Different Twist Pretzel of New York, Inc. and agrees to identify his company (franchisor) in any lease between his company and the landlord Ferry Terminal Management Company LLC as well as ensuring the Wayne Rose receives any default notices from the landlord in any lease.

In consideration of the same, Wayne Rose represents to Reshma Shah that the licensing fee from Chapel (Different Twist) shall be $5,000 for all stores and/or kiosk in the Ferry Terminal and the total royalty fee(s) shall be 5% of the gross sales including ice cream (unless using a company that charges franchise fees) with no other cost.

Reshma Shah understands that all billing, supply ordering and otherwise shall be done directly by Chapel and she shall install a POS system, if requested and shall cooperate on any annual audits if requested by Wayne Rose or Chapel.

Reshma Shah understands and Wayne Rose represents that any licensing agreement entered between Wayne Rose and/or his company and/or Chapel prior to the opening of the store in question shall start/be effective only when the store in question opens for business as the same being the date when his contract with Chapel shall then commence.

This agreement can be signed in counterparts.

_____          _____
Wayne Rose                                Reshma Shah

EXHIBIT E

0/22033 RECEIVED PAPERS (Page 29 of 234)

# SUBLEASE BETWEEN

# FERRY TERMINAL MANAGEMENT GROUP LLC, LANDLORD

## and



# WHITEHALL PRETZEL & ICE CREAM, INC., TENANT

## for retail space located in

# WHITEHALL FERRY TERMINAL

PREPARED BY:
PENN PROEFRIEDT SCHWARZFELD & SCHWARTZ
114 West 47th Street, 19th Floor
New York, New York 10036

05 JUL −8 PM 2:47

DEPT OF TRANSPORTATION
OFFICE OF LEGAL AFFAIRS



PLAINTIFF'S
EXHIBIT

2010/22033 RECEIVED NYSCEF 11am 01

# S U B L E A S E

THIS INDENTURE OF SUBLEASE (this "Lease") is made and entered into this 8th day of June, 2005, by and between Ferry Terminal Management Group LLC, a New York limited liability company ("**Landlord**"), having an address at 6 Water Street, New York, New York 10004, Attention Stephen H. Penn, Esq., and Whitehall Pretzel & Ice Cream Inc., a New York corporation ("**Tenant**"), having an address at 227 Beach 86th Street, Rockaway Beach, New York 11693.

## W I T N E S S E T H:

## ARTICLE 1

## DEFINITIONS

**Section 1.1 - Basic Lease Provisions.** The following basic lease provisions are an integral part of this Lease, are referred to in other Sections hereof, including the Sections identified below and are presented in this Section for the convenience of the parties. Such basic lease provisions are not intended to constitute a complete list of all charges which may become due and payable under this Lease.

(a) Commencement Date: As defined in Article 6, Section 6.2(a).

(b) Ferry Terminal: (Article I, Section 1 .2(i)) – Whitehall Street, New York, New York, and Staten Island, New York.

(c) Fixed Minimum Rent (Article 11, Section 11.1): (i) For Lease Year One (1), $114,000.00 per Lease Year; for Lease Year Two (2), $117,420 per Lease Year; for Lease Year Three (3), $120,943.00 per Lease Year; for Lease Year Four (4), $124,571.00 per Lease Year; for Lease Year Five (5), $128,308.00 per Lease Year; for Lease Year Six (6), $132,157.00 per Lease Year; for Lease Year Seven (7), $136,122.00 per Lease Year; for Lease Year Eight (8), $140,206.00 per Lease Year; for Lease Year Nine (9), $144,412.00 per Lease Year; and for Lease Year Ten (10), 148,744.00 per Lease Year.

(d) Guarantor:       (SEE EXHIBIT D)
Address:        227 Beach 86th Street
                Rockaway Beach, New York 11693
Social Security No: 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

(e) Initial Estimated CAM Costs: (Article 12, Section 12.2): NONE.

(f) Initial Tenant's Proportionate Share: (Article 1, Section 1.2(j) – 7.86% (subject to change)

(g) Permitted Use: (Article 8, Section 8.1). Subject to the provisions of Article 8 of this Lease, Tenant shall use the Premises to sell retail and wholesale, flavored soft pretzels, which flavors may include but shall not be limited to original, cinnamon, sugar, garlic, whole wheat, sour cream and onion, sesame seed, raisin, caramel almond, jalapeno, and other flavors and toppings which may include cheese, cream cheese, assorted cream cheeses, assorted mustards, chocolate fudge, marinara sauce, and other toppings that Tenant's franchisor, Different Twist of New York, Inc., may introduce. Tenant may also sell other products utilizing pretzel dough such as stuffed pretzels and gourmet popcorn. Tenant may sell at retail, ice cream and frozen yogurt in various flavors together with toppings commonly used in an ice-cream parlor, fountain carbonated drinks and coffee. Tenant may not sell gum, canned or bottled carbonated drinks, hot dogs, gourmet coffee or fresh baked cakes at the Premises.

(h) Prohibited Uses: As set forth in Exhibit B.

(i) Rent Commencement Date: As defined in Article 10.

(j) Taxes: (Article 12, Section 12.3).

(k) Tenant's Billing Address (if different from Preamble): Same as Preamble

Tenant's Legal Notice Address (if different from Preamble): (Article 26, Section 26.1):

(l) Tenant's Federal Tax I.D. Number: Pending.

(m) Tenant's Trade Name: (Article 8, Section 8.1)
Different Twist Pretzel

(n) Term of Lease: (Article 9, Section 9.1); Ten (10) Lease Years commencing on the Commencement Date and terminating on last day of the month in which the Tenth (10th) anniversary of the Rent Commencement Date occurs, unless extended pursuant to Section 9.5 or sooner terminated as provided herein (the "Term").

(o) Utility Services and Charges: (Article 13, Section 13.2): Payable by Tenant as billed per metered or estimated and adjusted billing.

(p) Franchisor: Different Twist of New York, Inc. (or any successor thereof by or through a merger, consolidation, acquisition, or restructure).

(q) Franchisor's Legal Notice Address is: 30 Vesey Street, Suite 501, New York, New York 10007.

Section 1.2 - Certain Defined Terms. Wherever used in this Lease, the following terms shall be construed to mean as follows:

-7-

2010/22033 RECEIVED PAPERS  (Page 89 of 234)

## ARTICLE 29

## INTENTIONALLY OMITTED

IN WITNESS WHEREOF, the parties hereto have executed this Lease, as of the day and year first written above.

LANDLORD:

FERRY TERMINAL MANAGEMENT GROUP, LLC,
a New York limited liability company

By: _____

Name: Stephen H. Penn

Title:  Member

TENANT:
WHITEHALL PRETZEL & ICE CREAM INC.
a New York corporation

By: _____

Name: Reshma Shah

Title:  President

<u>GUARANTY</u>

**DEMISED PREMISES:** The building known as and located at White Hall Street, New York, New York.

**LANDLORD:** Ferry Terminal Management Group LLC ("FTMG"), having an office at 6 Water Street, Suite 301, New York, NY 10004 ("Landlord").

**TENANT:** Whitehall Pretzel & Ice Cream, Inc., having an address at Whitehall Ferry Terminal, and (its) (or their) successors and assigns (collectively "Tenant").

**LEASE:** Lease dated as of June 8, 2005, by and between Landlord and Tenant (as the same may be further amended from time to time, the "Lease").

**DATE OF THIS GUARANTY:** This Guaranty is dated as of June 8, 2005.

1. In consideration of, and as an inducement for, the granting, execution and delivery of the Lease and in further consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned, Reshma Shah ("Guarantor") hereby absolutely, unconditionally and irrevocably guarantees to Landlord the full and prompt payment of rent due under the Lease payable by Tenant, its successors and assigns for the period up to and including the date upon which Tenant shall have substantially completed Tenant's construction of its retail store located in the Whitehall Ferry Terminal, New York, New York and opened the Premises for business to the public fully fixtured, stocked and staffed (the "Commencement Date").

2. This Guaranty is an absolute, unconditional and irrevocable guaranty of payment, and performance as outlined and limited in Paragraph No. 1 above. The liability of Guarantor hereunder is coextensive with that of Tenant in respect of the

New York shall govern and control the validity, interpretation, performance and enforcement of this Guaranty.  If more than one party is executing this Guaranty as a Guarantor, then they shall be jointly and severally liable for the performance of the obligations of Guarantor hereunder.  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Landlord and its successors and assigns.

Any terms defined in the Lease but not defined herein shall have the respective meanings ascribed thereto in the Lease.

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty, as of the day and year first above written.

Guarantor,

Reshma Shah

-4-

## AMENDMENT TO RECOGNITION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

The Recognition, Non-Disturbance and Attornment Agreement dated July 5, 2007 (the "Original Agreement), annexed hereto, between the City of New York, a municipal corporation of the State of New York, acting by its Department of Transportation with offices located at 40 Worth Street, New York, New York 10013 ("Fee Owner") and Whitehall Pretzel and Ice Cream, Inc with an office at 11 Fish Road, Medford, New York 11763) ("Subtenant) is hereby amended as of this November 17 , 2008 as follows:

1.  The address of Subtenant is hereby changed from 227 Beach 86th Street, Rockaway Beach, New York 11693 to 11 Fish Road, Medford, New York 11763;

2.  Paragraph One of the Original Agreement is amended so that the text reading:

    "Fee Owner (or its assignee) may, at its option, terminate the Sublease upon thirty days' notice to Subtenant at any time after the last day of the calendar month in which occurs the fifth (5th) anniversary Subtenant's commencement of business at the Premises (i.e. Subtenant commences sales to the public)" is deleted and replaced with the following text

    "Fee Owner (or its assignee) may, at its option, terminate the Sublease upon thirty days' notice to Subtenant at any time after the last day of the calendar month on which occurs the fifth (5th) anniversary of December 31, 2008 or the date of Subtenant's commencement of business at the Premises (i.e Subtenant commences sales to the public), whichever occurs first. "

3.  All other terms and conditions of the Original Agreement remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first written above

APPROVED AS TO FORM:                THE CITY OF NEW YORK

By                                    By
    Name                                  Name  James C. DeSimone
    Title                                 Title  COO, Staten Island Ferry


WHITEHALL PRETZEL AND ICE CREAM, INC.

By:      _____
    Name
    Title

EXHIBIT G

Wayne Rose
227 Beach 85th Street
Rockaway Beach, NY 11693

September 18, 2008


Different Twist Pretzel Co.
299 Blue Run Road
Cheswick, PA 15024

Re:    Different Twist Pretzel Co. of Penn with Different Twist
       Pretzel of NY -- Assignment to Wayne Rose


Dear Pete & Joan:

As we discussed on the phone the other day since construction of the Whitehall store has not
even started and since my health is still pretty bad, I am exercising my assignment rights under
our contract, as we agreed, "immediate family members" and such assignment to me is
"immediate family" so I can close out the shell corporation so it will not interfere with my
disability application or tax problems.  I will now be personally responsible and be paid
personally under my social security number.

I shall close the company since nothing is going to happen until that store opens and I get back
on my feet a little better.

I provide a signed assignment form for your records.  Please make sure I am paid individually for
the IRS.


Very truly yours,

Wayne Rose

EXHIBIT H

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF QUEENS

WAYNE ROSE,                                          :

                          Plaintiff,                 :        Index No. 22033/10

          -against-                                  :        RESPONSE TO JUDICIAL
                                                              SUBPOENA DUCES TECUM
                                                     :
DIFFERENT TWIST PRETZEL, INC. AUGUST PETER
MAGGIO, JOAN MAGGIO, CHAPEL BANKS, FERRY              :
TERMINAL MANAGEMENT GROUP, WHITEHALL
PRETZEL & ICE CREAM, INC., MOHAMAD SHAH
KAPOOR, et al.,
                          Defendant.                 :

STATE OF NEW YORK      )
                       )        ss.:
COUNTY OF NEW YORK     )

  Stamatia Tsismenakis, being duly sworn, deposes and says that she is a Senior Project Manager in the Asset Management Division for New York City Economic Development Corporation ("NYCEDC"), and that the statements alleged in the foregoing response to judicial subpoena duces tecum are true to her knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matter she believes them to be true.

  Deponent further says that the grounds of her belief as to all matters not therein stated upon his knowledge are as follows: information obtained from the books and records of NYCEDC and its agents, and from statements made to him by current and former staff or agents of NYCEDC, agencies of the City of New York, and others.

  The actual date of opening/rent commencement date for the Whitehall Pretzel and Ice Cream, Inc. bearing the account number 000004301 was December 31, 2008. ( Jan 1, 2009 1st day in operation)

Dated: New York, New York
   December 28, 2012

            _Stamatia Tsismenakis_   Stamatia Tsismenakis

RICHARD TOM
NOTARY PUBLIC, STATE OF NEW YORK
NO. 24-5008816
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES 03/01/ 2015

EXHIBIT I

received from Queens (123035470) per admin transfer order 193 of Hon. Fern Fisher dtd 2/18/14 changing venue to Kings County    Page 255 of 5456

# Internal Revenue Service
### United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

## Wage and Income Transcript

Request Date: 08-23-2011
Response Date: 08-23-2011
Tracking Number: 100107955428

SSN Provided: XXX-XX-2232
Tax Period Requested: December, 2009

## Form 1099-MISC

Payer:
Payer's Federal Identification Number (FIN): 25-1894001
DIFFERENT TWIST PRETZEL
PO BOX 354
BAKERSTOWN, PA 15007-0000

Recipient:
Recipient's Identification Number: XXX-XX-2232
WAYNE ROSE
127 BEACH 84TH ST
ROCKAWAY BEAC, NY 11693-0000

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | N/A |
| Tax Withheld: | 0.00 |
| Non-Employee Compensation: | $5,908.00 |
| Medical Payments: | 0.00 |
| Fishing Income: | 0.00 |
| Rents: | 0.00 |
| Royalties: | 0.00 |
| Other Income: | 0.00 |
| Substitute Payments for Dividends: | 0.00 |
| Excess Golden Parachute: | 0.00 |
| Crop Insurance: | 0.00 |
| Attorney Fees: | 0.00 |
| Section 409A Deferrals: | 0.00 |
| Section 409A Income: | 0.00 |
| Direct Sales Indicator: | Not Direct Sales |
| Second Notice Indicator: | No Second Notice |

This Product Contains Sensitive Taxpayer Data

J. Powell, Tax Law Specialist
Accounts Management Division 3
Jacksonville, FL ID # 1000571661.



Printed: 11/16/2011

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents | OMB No. 1545-0115 | | |
|---|---|---|---|---|---|
| Different Trust Premier<br>6052 Route 3<br>P.O. Box 274<br>Bakersworld, Fl 15007 | | $ | **2018** | Miscellaneous<br>Income | |
| | | 2 Royalties | Form 1099-MISC | | |
| | | $ | | | |
| | | 3 Other income | 4 Federal income tax withheld | Copy B<br>For Recipient | |
| | | $ | $ | | |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments | | |
| 25-1764179 | ▮▮▮▮ | $ | $ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | | |
| Mr. Wayne Rose | | $ 5,908.70 | $ | | |
| Street address (including apt. no) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | | |
| 227 Beach 86th Street | | | $ | | |
| City, state, and ZIP code | | 11 | 12 | | |
| Rockaway Beach, N.Y. 11693 | | | | | |
| Account number (see instructions) | | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | | |
| | | $ | $ | | |
| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income | |
| $ | $ | $ | | $ | |
| | | $ | | $ | |

Form 1099-MISC                (keep for your records)                Department of the Treasury - Internal Revenue Service

 **Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

Request Date: 09-17-2012
Response Date: 09-17-2012
Tracking Number: 100144092079

Wage and Income Transcript

SSN Provided: ▓▓▓▓▓▓▓▓
Tax Period Requested: December, 2009

Form 1099-MISC

043449



Payer:
Payer's Federal Identification Number (FIN):25-1894001
DIFFERENT TWIST PRETZEL
PO BOX 334
BAKERSTOWN, PA 15007-0000

Recipient:
Recipient's Identification Number: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
WAYNE ROSE
227 BEACH 86TH ST
ROCKAWAY BEAC, NY 11693-0000

```
Submission Type:.......................................................Original document
Account Number (Optional):...................................................N/A
Tax Withheld:..............................................................0.00
Non-Employee Compensation:............................................$5,908.00
Medical Payments:..........................................................0.00
Fishing Income:............................................................0.00
Rents:.....................................................................0.00
Royalties:.................................................................0.00
Other Income:..............................................................0.00
Substitute Payments for Dividends:.........................................0.00
Excess Golden Parachute:...................................................0.00
Crop Insurance:............................................................0.00
Attorney Fees:.............................................................0.00
Section 409A Deferrals:....................................................0.00
Section 409A Income:.......................................................0.00
Direct Sales Indicator:.............................................Not Direct Sales
Second Notice Indicator:............................................No Second Notice
```

This Product Contains Sensitive Taxpayer Data

4/29/2014 Papers received from Queens (22033/13) pursuant to transfer order 193 of Hon. Fern Fisher dtd 2/16/14 changing venue to Kings County    Page 256 of 5459



**Internal Revenue Service**
United States Department of the Treasury
PHILADELPHIA, PA 19255-1498

Tracking ID: 100144092079
Date of Issue: 09-17-2012

043448.113866.0170.005 1 SP 0.450 536



WAYNE ROSE
148 A MCDOOGLE ST
BROOKLYN, NY 11233

043449

Tax Period: December, 2010

Information about the Request We Received

In this letter, we'll report the status of the request we received.

We're enclosing the relevant information from W-2 form, or forms, and/or 1099 information for the available tax period or periods.

If you have any questions about information contained in the transcripts or other enclosed information, please call us at the IRS telephone number listed in your local directory or at 1-800-829-0922.

Sincerely Yours,

Patricia LaPosta, Director
Electronic Products & Svcs Support

Enclosures:
Wage and Income



Printed: 11/16/2013



# Internal Revenue Service
### United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

Request Date: 09-17-2012
Response Date: 09-17-2012
Tracking Number: 100144092079

Wage and Income Transcript

SSN Provided: ~~XXX-XX-XXXX~~
Tax Period Requested:  December, 2010



Form 1099-MISC

043448

Payer:
Payer's Federal Identification Number (FIN):20-8746311
DIFFERENT TWIST PRETZEL
PO BOX 334
BAKERSTOWN, PA 15007-0000

Recipient:
Recipient's Identification Number:~~XXX-XX-XXXX~~
WAYNE ROSE
227 BEACH 86TH ST
ROCKAWAY BEACH, NY 11693-0000

```
Submission Type:.........................................Original document
Account Number (Optional):.............................................N/A
Tax Withheld:.........................................................0.00
Non-Employee Compensation:............................................0.00
Medical Payments:.....................................................0.00
Fishing Income:.......................................................0.00
Rents:................................................................0.00
Royalties::...........................................................0.00
Other Income:....................................................$2,457.00
Substitute Payments for Dividends:....................................0.00
Excess Golden Parachute:..............................................0.00
Crop Insurance:.......................................................0.00
Attorney Fees:........................................................0.00
Section 409A Deferrals:...............................................0.00
Section 409A Income:..................................................0.00
Direct Sales Indicator:....................................Not Direct Sales
Second Notice Indicator:....................................No Second Notice
```

This Product Contains Sensitive Taxpayer Data

Papers received from Queens (22003/10) per admin transfer order 193 of Hon. Fern Fisher dtd 2/18/14 changing venue to Kings County　　　Page 260 of 545

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| Perent Twizt cretzel Box 32# Flintown, N.Y 5007 | $ | **2010** | |
| | 2 Royalties $ | Form 1099-MISC | |
| | 3 Other Income $ 5,457.00 | 4 Federal income tax withheld -0- | Copy B For Recipient |
| PAYER'S federal identification number ┃ RECIPIENT'S Identification number | 5 Fishing boat proceeds $ | 6 Medical and health care payments | |
| RECIPIENT'S name　Wayne rose | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| Street address (including apt. no.)　#7 beach 45th street | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | |
| City, state, and ZIP code　Rockaway Beach, N.Y. 11693 | 11 | 12 | |
| Account number (see instructions) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| 15a Section 409A deferrals $ ┃ 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form 1099-MISC　　　　(keep for your records)　　　Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| | $ | **2010** | |
| | 2 Royalties $ | Form 1099-MISC | |
| | 3 Other Income $ | 4 Federal income tax withheld $ | Copy B For Recipient |
| PAYER'S federal identification number ┃ RECIPIENT'S Identification number | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | |
| RECIPIENT'S name | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest $ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| Street address (including apt. no.) | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | |
| City, state, and ZIP code | 11 | 12 | |
| Account number (see instructions) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ ┃ 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form 1099-MISC　　　　(keep for your records)　　　Department of the Treasury - Internal Revenue Service

Printed: 11/16/2011



RECEIVED PAPERS (Page 128 of 234)

RECEIVED PAPERS (Page 133 of 234)

DIPPIN' IT TWIST PRETZEL                                          1100

PAY
TO THE
ORDER OF _____          $ 409.50

_____ DOLLARS

Citizens Bank
Pennsylvania

FOR _____

122

**DIFFERENT TWIST PRETZEL**
6052 ROUTE 6
PO BOX 804
BAKERSTOWN, PA 15007

1051

DATE  4-8-09

PAY TO THE ORDER OF  Wayne Rice                    $ 478.40

THE SUM OF 478 DOLS 40 CTS                          DOLLARS

Citizens Bank
Pennsylvania

FOR  WHITEHALL TERMINAL-MAZEN
     DOVER DOWNS - MAZEN

⑆001051⑆ ⑆036078150⑆ 6221804278⑈

EXHIBIT J



# MASTER LICENSE AGREEMENT INTERNATIONAL

THIS AGREEMENT is dated as of ___I $^{st}$___ day of ___June___, 200 9 between The Different Twist Pretzel Company - Global LLC, a Pennsylvania Corporation ("Licensor") and ___RESHMA SHAH___ ("Licensee")

WHEREAS, through the expenditure of time, effort, and money by Licensor, Licensor has acquired skill in the development and operation of retail units specializing in the sale of pretzel products; and

WHEREAS, Licensor has developed recipes for pretzel dough mix which are confidential and proprietary to Licensor (the "Mix"); and

WHEREAS, Licensee desires to operate a retail unit specializing in the sale of pretzel products made from the Mix under the Marks and subject to the terms and conditions set forth in this Agreement.

WHEREAS, subject to the terms and conditions of this Agreement, Licensor is willing to grant a license to Licensee to operate such Units.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the parties hereto agree as follows:

Section 1.    The Licensee

 1.1 Licensor hereby grants to Licensee the exclusive right to develop and operate Units in_____The State of New York_____, subject to the terms and conditions of this Agreement.

 1.2 Licensor hereby grants to Licensee the right to sublicense third parties to operate Units in_____The State of New York_____, (Sublicensee will be subject to the terms and conditions of this Agreement).

Section 2.    Fees

 2.1 In consideration of the grant of License herein, Licensee shall pay to Licensor the following amounts:

  (a) Upon execution of this agreement, the sum of $ 10,000.00 __ shall be waived. An additional sum of $5,000.00 will be due to Licensor for each additional shop opened by Licensee.

  (b) Licensee shall pay to Licensor on a quarterly basis without deduction, together with the fees payable under Section 2.1 (a) above; (i) 50% of all license fees collected by Licensee from each Sublicensee, and (ii) 50% of all other revenues collected by Licensee from each Sublicensee.

  (c) Licensee shall keep accurate accounting of all business transactions. This accounting shall be submitted to Licensor on a bi-monthly bases along with a Licensing fee amounting to 3% of licensee owned units and 5% or sublicense owned unit's gross sales.

*[handwritten: 3%]*

Section 3    Terms and Renewal

*[handwritten: IT WAS 2½%]*

 3.1 The license herein granted shall commence on the date hereof and continuous thereafter for a period of 15 years, unless terminated sooner in accordance with the terms and conditions of this Agreement.

 3.2 So long as Licensee has complied with and is not in default of any of the terms and conditions of this Agreement or any other agreement in effect between Licensee and Licensor, or between Licensee and any affiliate of Licensor, then at the expiration of the term hereof, Licensee may renew this Agreement for an additional term of 10 years, provided, however, that the parties mutually agree on a development schedule for the Territory for the renewal terms.

910/22033 AFFIRMATION REP  Y (Page 6 of 10)

Section 4     Development of Units

4.1     Licensee shall open and operate, or sublicense to others the right to open and operate, (i) a minimum of Zero additional Units within the Territory during the first 24 month period of the term effective the date of signing of this Agreement, and (ii) a minimum of One additional Units within the Territory during each consecutive 12 month period of the term of this Agreement after the initial 24 month period. It is the intention of the parties that the number of Units set forth above shall represent the number of additional Units to be opened during such 12 month period and remain in operation by the end of such 12 month period. Any Unit that closes or is terminated during the term hereof shall NOT be subtracted from the total Units deemed to be opened in a 12 month period hereunder; any Units opened during a 12 month period which exceed the number required hereunder may be used to fulfill the required number of Units in the subsequent 12 month period. Licensor shall furnish Licensee with all inquires it receives regarding Units within the Territory.

4.2     In the event Licensee fails to develop the Territory in accordance with this Agreement, Licensee's rights hereunder shall no longer be exclusive in the Territory, and Licensor shall be free to develop Units in the Territory, or to license others the right to develop such Units, either directly or by sublicensing third parties, at any location either inside or outside the Territory. Licensee will, however, retain all rights to those Units as previously established and/or subleased under the terms of this Agreement. With the exception of the right to the Territory, Licensee and Licensor will be bound by all other terms of this Agreement.

4.3     In the event Licensee sublicenses other the right to open Units in the Territory, Licensor shall require each Sublicensee to execute a sublicense agreement in form satisfactory to Licensor which provides for (i) protection of the Marks, (ii) confidentiality of the proprietary information, and (iii) the purchase of pretzel dough mix in accordance with Section 5 hereof.

Section 5     Product Purchases

5.1     Licensee shall sell only pretzel products made from The Different Twist Pretzel mix at the Units along with other Non Compete Products and Beverages from outside vendors. Licensee shall purchase Mix from Licensor's designee, and maintain sufficient quantities of the Mix at each Unit to meet the demand of customers of each such Unit. Such quantity is to be mutually agreed upon by Licensor and Licensee. 

5.2     Payment on all invoices is due net 30 days. Licensee will receive a 2%

Page 3 of 12

discount on all invoices paid within 10 days of delivery.

Section 6.    Termination

6.1    Upon Written notice to Licensee, Licensor may immediately terminate this Agreement upon the occurrence of any of the following events:

(a)    If Licensee:

(i)    makes an assignment for the benefit of creditors, or a written admission of inability to pay its debts or obligations as they become due, or becomes insolvent, is adjudged a bankrupt, or if a petition in bankruptcy is filed against it;

(ii)    seeks, consents to, acquiesces in or permits the appointment by or on behalf of a creditor of any manager, trustee, receiver or liquidator of Licensee, or all or a substantial part of its assets, or fails to vacate the appointment of any manager, trustee, receiver of liquidator for any such purpose within 15 days of such appointment;

(iii)    defaults in the payment of any amount required to be paid to Licensor whether under this or any other agreement made between Licensor and Licensee or between any affiliate of Licensor and Licensee;

(iv)    assigns or attempts to assign this Agreement or any rights hereunder without obtaining the assignee's prior written assumption of Licensee's obligations hereunder;

(v)    discloses any trade secrets provided to Licensee by Licensor to the detriment of Licensor or any of its affiliated, or commits any act which, in the sole opinion of Licensor, would bring the Mark or Licensor into public disrepute, scandal or ridicule, or makes any unauthorized use of the Mark; or;

(vi)    fails to develop and keep open and operating the required number of Units within the Territory in accordance with Section 4 hereof.

(b)    If Licensee defaults in the performance of any of its obligations under the terms of this Agreement other than those referred to in Section 6 (a) above, Licensor shall have the right to terminate this Agreement upon 30 days written notice to Licensee, and such notice of termination shall become effective unless Licensee shall remedy such default within such 60 day period.



6.2    Upon any termination or expiration of this Agreement, the following terms and conditions shall apply:

(a)    Licensee shall pay to Licensor within 30 days after the effective date of termination or expiration of this Agreement all amounts owed pursuant to this or any other agreement between Licensor (or any affiliate of Licensor) and Licensee which are then unpaid.

(b)    Licensee shall immediately return to Licensor all copies of information provided by Licensor concerning the operation of Units under the Marks, and all other written materials and other proprietary information which have been loaned or provided to it by Licensor.

(c)    Licensee shall at its sole expense within 15 days make such removals or changes in signs and colors as Licensor shall reasonably request so as to distinguish effectively the Units from their former appearance and from any other Units. If Licensee shall fail to make such changes within the specified time, then Licensor may enter upon such premises and make such changes at Licensee's expense, and Licensor's conduct shall not be considered a trespass nor shall Licensor be held liable for any damages as a result thereof.

(d)    If this Agreement expires or is terminated for any reason, Licensee shall not, for a period of 2 years commencing on the effective date of termination or expiration of this Agreement, engage as an owner, partner, director, officer, employee, consultant, investor, representative or agent, or in any other capacity, in any other restaurant, store or business selling pretzel products.

Page 5 of 12



Section 7     <u>Assignment and Transfer</u>

7.1     Either Party to this Agreement shall be entitled to assign any or all of its rights hereunder to any person, partnership, association, corporation, or other entity, provided that the assignee or transferee shall agree in writing to assume all obligations of the assigning or transferring party relating to matters assigned. Upon such assignment and assumption, the assigning or transferring party shall be under no further obligation with respect to the matters so assigned, but shall remain liable for its breaches and for monetary obligations then unpaid under this Agreement to the date of assignment or transfer.

7.2     The parties acknowledge that they do not intend to create a franchise relationship hereunder, and Licensee's obligations to Licensor hereunder are intended (i) to compensate Licensor for the use of the Mark, and (ii) to maintain the quality of products and services sold under the Mark solely to protect Licensor against loss of service mark or trademark rights as a result of inadequate quality control. In the event that Licensee sublicenses third parties to operate Units under the Mark, Licensee shall, at its sole expense, comply with all applicable laws, and shall indemnify and hold harmless Licensor against violation.

Section 8     <u>Relationship of Parties</u>

8.1     The parties acknowledge and agree that Licensee is an independent contractor operating under license from Licensor. Licensee shall conspicuously identify itself at the premises of the Units and in all dealings with others as the owner of the Units. Neither Licensor not Licensee shall make any agreements, representations or warranties in the name of or on behalf of the other that their relationship is other than Licensor and Licensee, nor shall Licensor be obligated for any damages to any person or property directly or indirectly arising out of the operation of the Units or Licensee's business conducted pursuant to this Agreement, whether caused by Licensee's negligent or willful action or failure to act. Licensor shall have no liability for any sales, use, excise, income, property or other taxes levied upon the Units or their assets or in connection with the services performed or sales made or business conducted by the Units Licensee shall indemnify Licensor against and shall reimburse Licensor for all such obligations, damages and taxes for which it is held liable and for all costs reasonably incurred by Licensor in the defense of any such claim brought against it or in any action in which it is named as a party, including, without limitation, reasonable attorney's fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses. Licensor shall have the right to defend any such claim against it. The indemnities and assumptions of liabilities and obligations herein  shall continue in full force and effect subsequent to and



notwithstanding the expiration or termination of this Agreement.

Section 9    <u>Injunctive Relief</u>

9.9    The parties acknowledge and agree that the rights of Licensee under this Agreement are of a specialized and unique character and that irreparable damage will result to Licensor if Licensee fails or refuses to perform its obligations under this Agreement. Therefore, in addition to any other rights which it may have at law or in equity, Licensor shall be entitled, without bond when the law permits, or with bond in compliance with the law, to temporary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement relating to Licensee's use of the Mark, Licensor's confidential and proprietary information, the obligations of Licensee upon termination or expiration of this Agreement, and to prohibit an act or omission by Licensee which constitutes a breach of this Agreement or a violation of any applicable law, ordinance or regulation, or which is dishonest or misleading to customers or prospective customers of the Units, or to other Units operated by Licensee of Licensor, or by Sublicensees, or constitutes a danger to employees or customers of the Units, or to the public, or may impair the goodwill associated with the Mark and Units. If Licensor secures any such injunction or order of specific performance, Licensee agrees to pay to Licensor an amount equal to the aggregate of its cost of obtaining such relief, including without limitation reasonable attorney's and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, and any damages incurred by Licensor as a result of the breach of any such provision.

Section 10    <u>Covenants of Licensor</u>

10.1    To the best of Licensor's knowledge, no claims or demands have been made by any third parties pertaining to the Mark and no proceedings have been instituted or are pending or threatened which challenge the rights of Licensor in the Mark. The Mark is not subject to any outstanding order, decree, judgement, stipulation, injunction, restriction or agreement restricting the scope of use of the Mark by Licensor, except other license agreements entered into by Licensor.

10.2    Licensor covenants with Licensee that no licensee agreement between Licensor and any third party restricts Licensor's right to enter into this Agreement. Licensor further covenants with Licensee that this Agreement and Licensee's use of the Mark in the Territory as contemplated hereunder will not infringe upon the rights of any other licensee or Licensor.



Page 7 of 12

10.3  Licensor shall keep confidential during the term of this Agreement and at all times following the termination of this Agreement any data, knowledge, or other information ("Confidential Material") of any kind acquired by Licensor during the term hereof concerning the business affairs of Licensee and shall not, without the prior written consent of Licensee, disclose or make such Confidential Material available to any third party.

10.4  Licensor represents that August P. Maggio is an officer of Licensor with requisites authority to enter into this License Agreement on behalf of Licensor.

10.5  Licensor shall sell to the Licensee a quality product using proper packaging. The Licensor guarantees the ingredients of the Mix will be equal to or better than the original recipe.

Section 11    Covenants of Licensee

11.1  Licensee shall not during the term of this Agreement have any interest as an owner (except of companies whose securities are publicly traded and listed), partner, director, officer, employee, consultant, investor, representative or agent, or in any other capacity, in any other restaurant, store or business selling pretzel products (except other Units operated under license agreements heretofore or hereafter entered into between Licensee and Licensor) at any location without the prior written approval of Licensor.

11.2  Licensee shall keep confidential at all times during the term of this Agreement and thereafter any data, know-how or other information of any kind acquired by Licensee regarding the business of Licensor and shall not disclose, use or make available such information to any third party in any manner whatsoever, and Licensee shall not attempt to' analyze or duplicate the Mix.



Page 8 of 12

Section 12    Miscellaneous

12.1    All provisions of this Agreement are severable and this Agreement shall be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein and all partially valid and enforceable provisions shall be enforced to the extent valid and enforceable. If any applicable and binding law or rule or any jurisdiction requires a greater prior notice of the termination of or refusal to renew this Agreement than is required hereunder, or if under any applicable and binding law or rule of any jurisdiction, any provision of this Agreement is invalid or unenforceable, the prior notice and/or other action required by such law or rule shall be substituted for the notice requirements hereof, or such invalid or unenforceable provision shall be modified to the extent required to be valid and enforceable.

12.2    All written notices permitted or required to be delivered pursuant to this Agreement shall be deemed so delivered 3 days after being placed in the United States mail by Registered or Certified Mail, Return Receipt Requested, postage prepaid and addressed to the party to be notified at its most current principal business address of which the notifying party has been notified..

12.3    No acceptance by Licensor of any payment by Licensee and no failure, refusal or neglect of Licensor or Licensee to exercise any right under this Agreement or to insist upon full compliance by the other with its obligations hereunder shall constitute a waiver of any provision of this Agreement.

12.4    Licensee shall not under any circumstances withhold payment of any amounts due to Licensor under this Agreement or under any other agreement in effect between Licensor and Licensee, or between any affiliate of Licensor and Licensee, for products purchased by Licensee, or any other amounts due Licensor or its affiliates hereunder.

12.5    The rights of Licensor and Licensee hereunder are cumulative and no exercise or enforcement by Licensor or Licensee of any right or remedy hereunder shall preclude the exercise or enforcement by Licensor or Licensee of any other right or remedy hereunder, at law or in equity.

Page 9 of 12

12.6   Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. S1051 et seq.), this Agreement and the license granted hereunder shall be governed by the laws of the Commonwealth of Pennsylvania. The parties agree to consent to the jurisdiction and venue of the State and Federal Courts in Allegheny County, Pennsylvania, and the parties further agree that any judgement may be enforced in any other jurisdiction.

12.7   All obligations of Licensor and Licensee which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement and until they are satisfied in full or by their nature expire.

12.8   This Agreement is binding upon the parties hereto and their respective executors, administrators, heirs, successors, and assigns.

12.9   No amendment or other modification of this Agreement shall be valid or binding on either party hereto unless reduced to writing and executed by the parties hereto.

12.10  The preambles, recitals, and Schedules hereto are part of this Agreement, which constituted the entire agreement of the parties. There are no other oral or written understandings or agreements between Licensor and Licensee relating to the subject matter of this Agreement. The headings of the several paragraphs hereof are for convenience only and do not define, limit or construe the contents of such paragraphs. The term"Licensee" as used herein is applicable to one or more persons, a corporation or a partnership, as the case may be, and the singular usage includes the plural and the masculine and neuter usage include the other and the feminine.

IN WITNESS WHERE OF, the parties hereto, intending to be legally bound hereby, have executed and delivered this Agreement as of the day and year first above written.

ATTEST:                                   Different Twist Pretzel Co. – Global  LLC

By:                                       By:_____

Title:                                    Title:_____


ATTEST:

By:                                       By: _Deshne Shah_____

Title:_____            Title: _PRESIDENT_____
                                                 _06/01/2009_

Page 11 of 12

INFORMATION REPLY (Page 16 of 16)

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No.

1,870,865 United States Patent and Trademark Office Registered Dec. 27, 1994

SERVICE MARK
PRINCIPAL
REGISTER



FIRST USE 3-15-1993; IN COMMERCE
12-10-1993.
NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "PRETZEL CO.",
APART FROM THE MARK AS SHOWN.

FOR: RESTAURANT SERVICES, RETAIL
OUTLETS FEATURING SOFT PRETZELS,
AND VENDING IN THE FIELD OF FOOD,
IN CLASS 42 (U.S. CLS. 100 AND 101).

SN 74-379,890, FILED 4-19-1993

CYNTHIA SLOAN,

EXAMINING ATTORNEY

Page 12 of 12

010/22033 AFFIRMATION REPLY (Page 16 of 19)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Index No.: 22033/10

WAYNE ROSE,

                                        Plaintiff,

        -against-

DIFFERENT TWIST PREZTEL, INC., AUGUST PETER MAGGIO, JOAN MAGGIO, CHAPIN BANKS INVESTIMENT, INC., RESHMAN SHAH, MOHAMED SHAH, VINCENT KUMAR, JEEHAVAN SIVASUBRAMANIAM, SULEMAN SHAH, WHITEHALL PRETZEL & ICE CREAM, INC., SANEH KAPOOR EXECUTOR OF THE ESTATE OF BWANISH KAPOOR, and FERRY TERMINAL MANAGEMENT GROUP, INC.,

                                        Defendants.

───────────────────────────

REPLY AFFIDAVIT

───────────────────────────

SULLIVAN GARDNER PC
ATTORNEYS FOR RESHMA SHAH, MOHAMED SHAH, VINCENT KUMAR, JEEVAHAN
SIVASUBRAMANIAM, SULEMAN SHAH, WHITEHALL PRETZEL INC., FERRY TERMINAL MANAGEMENT
GROUP, INC., SANEH KAPOOR AS EXECUTOR OF THE ESTATE OF BWANISH KAPOOR, AND NEIL
KAPOOR
7 East 20th Street
New York, New York 10003
(212) 687-5900

To:

Attorney(s) for Plaintiffs

Service of a copy of the within                    is hereby admitted,

Dated,

                                        Attorney(s) for Defendants

Sir: — Please take notice
___ Notice of Entry
that the within is (certified) true copy of a
duly entered in the office of the clerk of the within named court on              2010
___ Notice of Settlement
that an order                          of which the within is a true copy will be presented for
settlement to the HON.                                          one of the judges of the
within named court, at
on                  2010   at            M.
Dated,

                                        Yours, etc.
                                        SULLIVAN GARDNER PC
                                        7 East 20th Street, Suite 4R
                                        New York, New York 10003

QUEENS COUNTY CLERK FILED    2013 JAN -8

QUEENS COUNTY CLERK FILED    2013 JAN -8

EXHIBIT

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------

WAYNE ROSE,                                   :        Index No. 22033/10

                                              :
                        Plaintiff             :        RESPONSE TO JUDICIAL
                                              :        SUBPOENA DUCES TECUM
            -against-                          :

DIFFERENT TWIST PRETZEL, INC. AUGUST PETER
MACCIO, JOAN MAGGIO, CHAPEL BANKS, FERRY
TERMINAL MANAGEMENT GROUP, WHITEHALL
PRETZEL & ICE CREAM, INC., MOHAMAD SHAH
KAPOOR, et al.,
                        Defendant.            :

------------------------------------------------------

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

        Stamatia Tsismenakis, being duly sworn, deposes and says that she is a Senior

Project Manager in the Asset Management Division for New York City Economic

Development Corporation ("NYCEDC"), and that the statements alleged in the foregoing

response to judicial subpoena duces tecum are true to her knowledge, except as to the matters

therein stated to be alleged upon information and belief, and as to those matter she believes

them to be true.

        Deponent further says that the grounds of her belief as to all matters not therein

stated up on his knowledge are as follows: information obtained from the books and records of

NYCEDC and its agents, and from statements made to him by current and former staff or

agents of NYCEDC, agencies of the City of New York, and others.

        The actual date of opening/rent commencement date for the Whitehall Pretzel and

Ice Cream, Inc. bearing the account number 000004301 was December 31, 2008. (Jan 1, 2009 1st
                                                                                  day in
                                                                                  operation)

Dated:  New York, New York
        December 28, 2012

                                              _Stamatia Tsismenakis_
                                               Stamatia Tsismenakis

        RICHARD TOM
        NOTARY PUBLIC, STATE OF NEW YORK
        NO. 24-5003318
        QUALIFIED IN KINGS COUNTY
        COMMISSION EXPIRES AUGUST 20, 2014

cc

At an IAS Term, Com 1 of the Supreme Court of
the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the 12th day of
August, 2015.

P R E S E N T:
HON. CAROLYN E. DEMAREST, JSC.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WAYNE ROSE                                                          Decision
                                                                   And
                                      Plaintiff(s),                Order

            -against-
DIFFERENT TWIST PRETZEL, INC., et al.
                                                          Index No. 9279/2014

                                      Defendant(s),
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

    Upon review of the prior decisions in the related case, Rose v Chapel Banks Investment, Inc.
(Index Number 196/14), I hereby recuse myself from this action.

    Upon consultation with Administrative Judge Lawrence Knipel, this matter is referred to
Commercial Part 4.

                                      E N T E R,

                                      _____
                                      Carolyn E. Demarest
                                      J. S. C.

**EXHIBIT L**

010/22033 AFFIDAVIT (Page 12 of 28)

2010/22033 PRELIMINARY CONFERENCE SO ORDERED (Page 1

| PC | 12/1/10 |
| CC | 2/24/11 |
| NI | 7/1/11 |

QUEENS COUNTY CLERK FILED

2010 DEC -3  AM 10: 23

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY : IAS PART

PRESENT: ~~HON~~

HON. SIDNEY F. STRAUSS                Justice ~~Strauss~~
_____x

Wayne Rose

                                        Plaintiff(s),        Index Number 22033/10

- against -

Different Twist Pretzel, Inc.
et al.                                  Date RJI Filed: _____

                                        Defendant(s).
_____x

Preliminary Conference Order

APPEARANCES
        Plaintiff(s):   NOAP
_____
        Defendant(s): S. Willum Gardner PC by Afinford by
Stern , Stapel by Stephen Weinhuber and  for a Different(s)(Pret
_____

Following a Preliminary Conference, it is hereby ORDERED that disclosure shall
proceed as follows:

        (1) Insurance Coverage: If not yet done, ____N/A____ shall disclose in writing the
existence and contents of any insurance agreement as described in CPLR §3101(f) on or before _____
        (2) Bill of Particulars:
                (a) A demand for a bill of particulars shall be served by
____AS on or before 45 days unless waived
                (b) A bill of particulars shall be served by __π__ on or before 30 days after
service
                (c) A supplemental bill of particulars shall be served by
____ as to Items _____ on or before _____.

127

(3) Medical Records and authorizations: On or before W/i 20 days duly executed written authorizations shall be furnished by Plaintiff for the following:

X Physician, and/or hospital, and/or autopsy records;
___ Employment records for the period _____ ;
___ No-fault file;
___ Other (specify) _____

(4) Physical Examinations:

(a) Examination of Plaintiff _____ shall be held on or before _____

(b) Pursuant to 22 NYCRR §202.17(b), at least 20 days before such examination, Plaintiff shall serve upon all other parties copies of the medical reports of those physicians who have previously treated or examined him/her.

(c) A copy of the examining physician's report shall be furnished to all parties by Plaintiff within 20 days of the examination.

(5) Depositions:

(a) Examinations before trial shall be conducted as follows: Plaintiff(s) shall appear for examination before trial at mutually agreed upon on 2/5/11, at 10 a.m./p.m. and shall produce all relevant books, papers, records, and other material for use at the deposition, including _____

Defendant(s) shall appear for examination before trial at mutually agreed upon on 2/9/11, at 10 a.m./p.m. and shall produce all relevant books, papers, records, and other material for use at the deposition, including _____

(b) Unless otherwise directed prior to the examinations before trial, attorneys seeking rulings on objections or making application for any other relief pertaining to the depositions shall promptly appear at Chambers with their reporter, or shall communicate with Chambers by telephone conference call, or shall, if necessary, communicate with the Justice assigned to handle emergencies, for a determination.

(c) Once begun, a deposition shall continue until completed and shall not be adjourned with further order of the Court.

(d) The transcript of an examination before trial shall be delivered to the party deposed within thirty (30) days of the deposition, and shall be returned, duly executed, with twenty (20) days thereafter.

(e) Subpoenas for the examination before trial of any non-party witness shall be served no later than forty-five (45) days after the completion of party depositions.

(6) Other Disclosure:

(a) On or before W/i 45, all parties shall exchange names and addresses of all witnesses, and shall exchange statements of opposing parties and photographs, or, if none, shall provide an affirmation to that effect.

(b) On or before 45 days, all parties shall exchange information relating to expert witnesses in compliance with CPLR §3101(D)(1).

(c) Demands for discovery and inspection shall be served on or before 1/10/11 _____

Within twenty (20) days after service of a notice, a party who objects to the disclosure, inspection or examination, shall serve a response which shall state with reasonable particularity the reasons for each objection, pursuant to rule 3122.

(d) Other (interrogatories, etc.) As per CPLR _____

- 2 -

010/22033 PRELIMINARY CONFERENCE SO ORDERED (Page 3 of

128

(7) <u>Additional Disclosure Issues:</u> With respect to additional disclosure issues, the parties shall comply with the following agreement: _____

_____

_____

_____

(8) <u>Impleaders:</u> All third-party actions shall be commenced on or before as per CPLR Joinder of a third-party action beyond this date without leave of Court may result in a severance.

(9) <u>Completion of Disclosure:</u> All disclosure shall be completed on or before 2-24-11

(10) <u>Note of Issue:</u> PLAINTIFF shall file a note of issue/certificate of readiness on or before 7/1/11.

(11) <u>Motions for Summary Judgment:</u> Pursuant to CPLR Rule 3212(a), any motion for summary judgment shall be made no later than ___20___ days after the filing of the note of issue.

(12) <u>Compliance Conference:</u> Unless a note of issue/certificate of readiness shall have been filed prior thereto, counsel for all parties shall appear at a compliance conference which shall be held on 2/24/11.

Bring medical reports and pleadings to Compliance Conference and be prepared to discuss settlement at that time.

Pursuant to 22 NYCRR 202.28, attorney for plaintiff is directed to file a stipulation or statement of discontinuance with the part of court to which the action has been assigned within 20 days of such discontinuance.

Failure to comply with any provision of this order may result in the imposition of costs, or sanctions, or other action authorized by law.

SO ORDERED:

HON. SIDNEY F. STRAUSS          J.S.C.

Dated: 12/1/10

The contents and provisions of the foregoing order are agreed to, and receipt of a copy of the order is acknowledged:

NO APP

Attorney for Plaintiff_____     Attorney for Defendant Sullivan Gardny PC by David Meghino

_____     Attorney for Defendant Stern Nt Stern by

Attorney for Plaintiff_____     Stephen Weintraub

_____     _____

Attorney for Plaintiff_____     Attorney for Defendant_____

_____     _____

Attorney for Plaintiff_____     Attorney for Defendant_____

HEARING PRELIMINARY CONFERENCE SO ORDERED (Page 4)

129

## SUPREME COURT OF THE STATE OF NEW YORK
### COUNTY OF QUEENS
88-11 Sutphin Blvd.
Jamaica, New York 11435

-------------------------------------------

Wayne Kose

                              **Plaintiff(s)**          Index No. 22033/10

-against-

Different Twist Pretzel Inc.
et al.                        **Defendant(s)**

-------------------------------------------

## NOTICE OF COMPLIANCE/SETTLEMENT CONFERENCE

A Compliance/Settlement Conference has been scheduled in the above-named case in which you appear as counsel.  The Conference will be held before JUSTICE MARTIN RITHOLTZ in the Compliance/Settlement Conference Part on 2/24/11 at 9:30 A.M.

Counsel appearing for the Conference MUST bring the Bill of Particulars and all previous orders in the case, including the Preliminary Conference Order.

At the conference, inquiry will be made regarding the following items of discovery as applicable:  bills of particular; authorizations; medical reports; discovery and inspection; document production; insurance information; EBT's; physical examinations; interrogatories; and compliance with prior discovery orders of the Court.

Additionally, serious settlement discussions will be conducted.

Consequently, an attorney representing your client MUST appear at the conference and MUST be fully familiar with the case and the status of discovery.  The attorney MUST bring to the Conference all available documentary evidence relating to injury and damages, and MUST be authorized to enter binding stipulations and to dispose of the case.

Failure to appear at the Conference may result in the imposition of sanctions or other appropriate judicial action.

- 4 -

At an I.A.S. Trial Term, Part   of  the  Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Borough of Brooklyn, City and State
of New York, on the        day of              20

P R E S E N T :

Hon. _____
                              Justice

_____

                              Plaintiff(s)          Cal. No.

                                                    Index No.

        - against -

_____

                              Defendant(s)

| The following papers numbered 1 to   read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause and Affidavits (Affirmations) Annexed_____ | |
| Answering Affidavit (Affirmation)_____ | |
| Reply Affidavit (Affirmation)_____ | |
| _____Affidavit (Affirmation)_____ | |
| Pleadings - Exhibits_____ | |
| Stipulations - Minutes_____ | |
| Filed Papers_____ | |

For Clerks use only

MG___

MD___

Motion Seq. #

_____

EJV-rev 11-04

E N T E R

_____
                    J.S.C.

HON. LAWRENCE KNIPEL
SUPREME COURT JUSTICE

**EXHIBIT M**

TODAY'S CAL.# 54          RJI DATE 6/22/15          INTAKE PART

## PRELIMINARY CONFERENCE ORDER
### PURSUANT TO PART 202 OF THE UNIFORM CIVIL RULES
### FOR THE SUPREME COURT KINGS COUNTY

HON. Knipel
w/ Hon. Ken Sherman

Wayne Rose

Plaintiff(s)

DATE: 12/9/20 16

Index# 9279 / 2014

- against -

Different Twist Pretzel, Inc.
et. Al.

Defendant(s)

Compliance Conference shall be held in
IAS Part CCP on 3/17, 20 17
at 9:30 a.m.
**FAILURE OF COUNSEL TO ATTEND THE
COMPLIANCE CONFERENCE MAY RESULT
IN THE IMPOSITION OF SANCTIONS**

PRINT ALL INFORMATION CLEARLY

|  |  |  | Consent to E-FILE? |  |
|---|---|---|---|---|
|  |  |  | YES | NO |
| ATTORNEY FIRM Wayne Rose | by Wayne Rose | FOR PLAINTIFF |  |  |
| ATTORNEY FIRM Tone & Assocs | by | FOR DEFENDANT |  |  |
| ATTORNEY FIRM | by Jordan Gibbot | FOR DEFENDANT |  |  |
| ATTORNEY FIRM | by | FOR DEFENDANT |  |  |

*DEFAULTS: DEFENDANT* _____
*HAS NOT BEEN SERVED/ HAS BEEN SERVED, NOT ANSWERED, AND TIME TO DO SO HAS EXPIRED.*
*DEFAULT JUDGMENT GRANTED / PENDING*

THE DISCOVERY END DATE/ NOTE OF ISSUE DUE DATE IS     6 / 22 /20 17

IT IS HEREBY ORDERED THAT THIS ACTION IS ASSIGNED TO THE:

_____ EXPEDITED   X STANDARD   _____ COMPLEX TRACK
AND DISCLOSURE SHALL PROCEED AS FOLLOWS:

I.    WRITE PLAINTIFF'S MOST SEVERE INJURY:   N/A

II.   TYPE OF CASE:   ____ MOTOR VEHICLE
                      ____ PREMISES LIABILITY
                      ____ PROFESSIONAL MALPRACTICE (MED. MAL. ETC.)
                      ____ OTHER, BRIEFLY DESCRIBE: Tortious interference w/ Contract
                      ____ CONTRACT
                      ____ LABOR LAW

III.  ☐ CPLR 325 (D) eligible, upon further order.

IV.   INSURANCE COVERAGE (INCLUDING EXCESS AND/ OR UMBRELLA COVERAGE)
      DEFENDANT _____ DEFENDANT _____
      ☐ IF NOT FURNISHED, PLAINTIFF TO BE ADVISED IN WRITING BY ____/____/20____
      IF NO EXCESS COVERAGE, PROVIDE AFFIDAVIT TO THAT EFFECT BY____/____/20____

## PRELIMINARY CONFERENCE ORDER

V.  BILL OF PARTICULARS:
☐ 1A. SUBMITTED.................☐ 1B. NOT SUBMITTED - TO BE SERVED BY _60 days_
☐ 2.  SUPPLEMENT/ AMEND BILL OF PARTICULARS TO BE SERVED BY _____

☐ 3.  DEFENDANT _____ TO PROVIDE A VERIFIED BILL OF PARTICULARS AS TO
AFFIRMATIVE DEFENSES WITHIN _60_ DAYS.

VI.  MEDICAL AND HOSPITAL AUTHORIZATIONS TO THE EXTENT NOT PREVIOUSLY PROVIDED:
☐ 1.  FURNISHED
☐ 2.  HIPAA COMPLIANT MEDICAL AUTHORIZATIONS FOR RECORDS AND HOSPITAL
AUTHORIZATIONS TO BE SERVED BY _____ / _____ / 20 _____
☐ 3.  PLAINTIFF(S) SHALL PROVIDE AUTHORIZATIONS TO OBTAIN COPIES OF THE ACTUAL
RECORDS OF ALL TREATING AND EXAMINING HEALTH CARE PROVIDERS, INCLUDING
DIAGNOSTIC TESTS, X-RAYS, MRIs, EMGs, CT SCANS, FOR INJURIES SPECIFIED IN THE BILL
OF PARTICULARS WITHIN _____ DAYS.
☐ 4.  PLAINTIFF(S), WITHIN 60 DAYS AFTER FILING NOTE OF ISSUE, MUST SERVE DEFENDANT(S)
WITH FRESH HIPAA COMPLIANT AUTHORIZATIONS FOR ALL KNOWN HEALTH CARE
PROVIDERS.

VII.  PHYSICAL EXAMINATION:
☐ 1A.  HELD  ☐ 1B. WAIVED  ☐ 1C. EXAM OF THE PLAINTIFF TO BE HELD WITHIN _____ DAYS
FOLLOWING THE CONCLUSION OF PLAINTIFF'S EBT.
☐ 2A.  PHYSICIANS' REPORTS FURNISHED
☐ 2B.  COPY OF PHYSICIANS' REPORTS TO BE FURNISHED TO PLAINTIFF WITHIN _____ DAYS OF
EXAMINATION.

VIII.  EXAMINATIONS BEFORE TRIAL:  ☐ PLAINTIFF(S)    ☐ DEFENDANT(S)   ☐ INFANT(S)
INFANT'S DATE OF BIRTH: _____ / _____ / 20 _____
TO BE HELD ON _____ / _____ / 20 _____
AT ☐ COURT REPORTER                    60 days
AT ☐ OFFICE OF _____ N/A
AT ☐ A LOCATION TO BE AGREED UPON LATER
☐ HELD (EXCEPT: _Within Kings County_ )
☐ WAIVED
☐ EXCEPT INFANT AT THIS TIME
DEPOSITIONS TO COMMENCE WITHIN 30 DAYS OF JUDICIAL DETERMINATION OF INFANT
PLAINTIFF'S COMPETENCE TO TESTIFY AT A "SWEAR-ABILITY" HEARING.

IX.  OTHER DISCLOSURE:
☐ 1.  NONE
☐ 2.  ALL PARTIES TO EXCHANGE NAMES AND ADDRESSES OF ALL
WITNESSES, OPPOSING PARTIES' STATEMENTS,
PHOTOGRAPHS, SURVEILLANCE TAPES, AND ACCIDENT
REPORTS PREPARED IN THE ORDINARY COURSE OF
BUSINESS. IF NONE, AN AFFIRMATION TO THAT EFFECT
SHALL BE PROVIDED.
☐ 3.  AUTHORIZATION FOR PLAINTIFF(S) FOR YEAR BEFORE, YEAR
OF, AND YEAR AFTER:
☐ EMPLOYMENT ATTENDANCE RECORDS
☐ IRS, IF SELF EMPLOYED OR W-2
☐ 4.  PLAINTIFF TO PROVIDE NO-FAULT/ COLLATERAL SOURCE
AUTHORIZATIONS.
ABOVE TO BE COMPLETED WITHIN _60_ DAYS.
☐ 5.  ALL PARTIES SHALL SUPPLY EXPERT WITNESS DISCLOSURE
PURSUANT TO CPLR.

PRELIMINARY CONFERENCE ORDER

☐ 6. _____
_____
_____
_____

X.    IMPLEADER ACTIONS:    ☐ 1.    NONE
☐ 2.    ALREADY COMMENCED
☐ 3.    TO BE COMMENCED WITHIN _____ DAYS AFTER COMPLETION
OF EBTs.

XI.    ADDITIONAL DIRECTIVES; SEE ATTACHED PAGE FOR ADDITIONAL DIRECTIVES.

IN THE EVENT OF UNJUSTIFIED NON-COMPLIANCE WITH THE TERMS OF THIS ORDER, COSTS OR OTHER SANCTIONS MAY BE IMPOSED.

NOTWITHSTANDING ANY DIRECTIVE CONTAINED HEREIN, ALL PARTIES ARE REQUIRED TO ABIDE BY THE JUSTICE'S INDIVIDUAL PART RULES LOCATED AT: *HTTP://WWW.NYCOURTS.GOV/COURTS/2JD/KINGS/CIVIL/JUDGESRULES.SHTML*

ALL DATES CONTAINED HEREIN RELATING TO THE COMPLETION OF ITEMS IN THIS PRELIMINARY CONFERENCE ORDER MUST BE ADHERED TO.

THE PARTIES HAVING APPEARED FOR A PRELIMINARY CONFERENCE ON THIS DATE HAVE REVIEWED THE TERMS AND/ OR CONDITIONS OF THIS ORDER AND HEREBY CONSENT TO SAME.

ATTORNEY: _____    FOR PLAINTIFF: _Wayne Rose_
(Attorney's signature)

ATTORNEY: _____    FOR DEFENDANT: _Reshma Shah Whitehall Atel_
(Attorney's signature)    _Kumar, Sivasubramanian & Sukhany Shah_

ATTORNEY: _____    FOR DEFENDANT: _____
(Attorney's signature)

ATTORNEY: _____    FOR DEFENDANT: _Different Tint Protech, Inc._
(Attorney's signature)

COURT ATTORNEY: _____

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

DATED: _12 / 9_ / 20 _16_    ENTER: _____

_J.S.C. / J.H.O._

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS STATE OF NEW YORK

------------------------------------------------------------------X

Ambush Alarm and Electronics, Inc.,                    INDEX NO.: 020638

                        Plaintiff,

            -   against –                               NOTICE TO TAKE
                                                        DEPOSITION UPON
Roman Abromovsky                                        ORAL EXAMINATION

                        Defendant.

------------------------------------------------------------------X


        PLEASE TAKE NOTICE that, pursuant to Article 31 of the Civil Practice Law
and Rule, the undersigned defendant will take the deposition upon oral examination of
witness Orlando Santos before a notary public who is not an attorney or employee of an
attorney for any part or prospective party herein and is not a person who would be
disqualified to act as a juror because of interest or because of consanguinity or affinity to
any party herein, at the offices of Barrister Reporters, 188 Montaque Street, Suite 402,
Brooklyn, NY 11201 on Thursday, March 31, 2016 at 2:30 PM with respect to evidence
material and necessary in the prosecution or defense of this action. If the date and time is
inconvenient with your witness, please let me know the first date and time possible so we
can proceed with concluding our discovery before the trial; and

        PLEASE TAKE FURTHER NOTICE that the said person to be examined is
required to produce at such examination the items set forth on the annexed RIDER.

Dated: New York, NY
        March 8, 2016                        Yours, etc.

                                             Roman Abramovsky
                                             Plaintiff, Pro Se
                                             401 West 25th Street, 8H
                                             New York, NY 10001
                                             (347) 753-3349

RIDER TO AND MADE A PART OF NOTICE TO
TAKE DEPOSITION UPON ORAL EXAMINATION

Note:   You are designated as the "witness" herein.

1.  Any and all active and/or inactive licenses that Plaintiff has to conduct alarm sales, installation, wiring installation, customer support, service calls, or alarm monitoring in the state of New York, and County of Kings.

2.  A list of each and every employee that works for and is employed by Plaintiff, whether as an employee, independent contractor, or represents Plaintiff in any business capacity.

3.  True and complete copies of each invoice transmitted to Defendant.

4.  True and complete copies of all checks, ACH confirmations, or any other document related to payment, by Defendant for any debts alleged in the complaint.

5.  All written communications, including letters, emails, and other written correspondence sent to or from Plaintiff regarding any allegation in the Verified Complaint for the period of 2012 to the present.

6.  All documentation regarding the formation, status, and composition of the Plaintiff, including but not limited to articles of incorporation, shareholder agreements, partnership agreements, operating agreements, lists of members, lists of shareholders, proof of publication, governmental filings (including Secretary of State), and any articles of dissolution.

7.  True and complete copies of all records of shipping, payment, returns, bills of lading, correspondence, ledgers, accounts receivable, installation completion slips and invoices relating to the purchase and installation of Plaintiff's goods to Defendant.

8.  All records with regard to any website or domain operated, controlled, owned, or registered by Plaintiff herein.

9.  The name of any DBA or trade name, whether online or otherwise, utilized by any Plaintiff herein with regard to the sale of alarm sales, installation, maintenance, or monitoring of alarm systems.

10. A complete electronic copy of each and every audio recording of any representative of Defendant. If it will be claimed that said recordings are no longer in existence, provide an affidavit with regard to the date and time of their destruction, including

the name of the individual who destroyed same, reference to the rule or directive pertaining to the destruction of the recording, and a transcript of said recording.

11. Copies of all tax returns for the last three years of Whitehall Pretzel & Ice Cream, Inc.;

12. Copies of all memorandums, letters, notes, e-mails or any other written communications between the plaintiff and witness as well as any third party person or corporation which pertains to any Ambush Alarm and Electronics, Inc., v. Roman Abromovsky matter or product with respect to the present law suite.

13. Any statements of plaintiff, or plaintiffs agent, servants, or employees, now in your possession, custody or control, on in the possession custody or control of any party you represent in this action, whether signed or unsigned, written, transcribed or otherwise recorded and whether obtained by investigation made after the date of the occurrence and regardless of how made;

14. Blank – Place Marker

15. Set forth the names and addresses of all partners of plaintiff Ambush Alarm and Electronics, Inc.,

16. Set forth any employment agreement(s), consulting agreement(s) or other agreement(s) between Ambush Alarm and Electronics, Inc., and witness Orlando Santos;

17. Copies of all personal tax returns for witness Orlando Santos for the last year;

18. Copies of any employment agreement(s); partnership agreements; share agreements; 1099's or any other written documents between Ambush Alarm and Electronics, Inc. and Orlando Santos.

19. Copies of all 1099's or W-2's (SSN redacted) of employees (past & present) of Ambush Alarm and Electronics, Inc. including witness Orlando Santos.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

WAYNE ROSE,                                    INDEX NO.:  9279/2014

                        Plaintiff,

            -   against –                       NOTICE TO TAKE
                                                DEPOSITION UPON
DIFFERENT TWIST PRETZEL, INC., AUGUST           ORAL EXAMINATION
PETER MAGGIO, JOAN MAGGIO, CHAPEL
BANKS INVESTMENT, INC., RESHMA SHAH,
MOHMED SHAH, VILADER KUMAR, JEEVAHAN
SIVASUBRAMANIAM, SULEMAN SHAH,  AND
WHITEHALL PRETZEL & ICE CREAM, INC.,

                        Defendants.

-------------------------------------------------------------------X


        PLEASE TAKE NOTICE that, pursuant to Article 31 of the Civil Practice Law
and Rule, the undersigned plaintiff will take the deposition upon oral examination of
defendant RESMA SHAH before a notary public who is not an attorney or employee of
an attorney for any part or prospective party herein and is not a person who would be
disqualified to act as a juror because of interest or because of consanguinity or affinity to
any party herein, at the offices of Barrister Reporters, 188 Montaque Street, Suite 402,
Brooklyn, NY 11201 on Thursday, July 30, 2015 at 2:30 PM with respect to evidence
material and necessary in the prosecution or defense of this action; and

        PLEASE TAKE FURTHER NOTICE that the said person to be examined is
required to produce at such examination the items set forth on the annexed RIDER.

Dated: Brooklyn, NY
        June 29, 2015                           Yours, etc.

                                                Wayne Rose
                                                Plaintiff, Pro Se
                                                760 Eldert Lane, #6S
                                                Brooklyn, NY 11208
                                                (718) 647-0879

RIDER TO AND MADE A PART OF NOTICE TO
TAKE DEPOSITION UPON ORAL EXAMINATION

Note:   You are designated as the "witness" herein.

1.      Copies of all invoices for an Pretzel Mix, Dough, Yeast, butter solution or any other products used in the day to day operations to make Pretzels at the Whitehall Pretzel & Ice Cream, Inc. store from any and all present supplies including the Pretzel defendants herein and/or any other third party for the last 60 days;

2.      Copies of all tax returns for the last three years of Whitehall Pretzel & Ice Cream, Inc.;

3.      Copies of all memorandums, letters, notes, e-mails or any other written communications between any of the defendants as well as any third party person or corporation which pertains to any Pretzel matter or product with respect to the Whitehall Pretzel & Ice Cream, Inc. store,

4.      Copies of any and all sales reports submitted to any city agency and/or any sales reports submitted to any defendant herein on the Whitehall Pretzel & Ice Cream, Inc. store;

5.      Any statements of plaintiff, or plaintiffs agent, servants, or employees, now in your possession, custody or control, on in the possession custody or control of any party you represent in this action, whether signed or unsigned, written, transcribed or otherwise recorded and whether obtained by investigation made after the date of the occurrence and regardless of how made;

6.      Blank – Place Marker

7.      Set forth the names and addresses of all partners of defendant FTMG.

8.      Set forth any employment agreement(s), consulting agreement(s) or other agreement(s) between FTMG and defendant Mohamed Shah and Bawanish Kapoor;

9.      Copies of all personal tax returns for each defendant for the last year;

10.     Copies of any employment agreement(s); partnership agreements; share agreements; 1099's or any other written documents between any and all the defendants pertaining to any matter whatsoever in the Staten Island Ferry Terminal Stores;

11.     Set forth the name and address of any individual who was trained to make Pretzels by Different Twist Pretzel Company and specifically set forth where they were trained and by who were they trained.

**EXHIBIT N**